HIRAM VAN BELLAMY, EMPLOYEE v. MORACE STEVEDORING COMPANY, EMPLOYER; TRAVELERS INSURANCE COMPANY, CARRIER.

(Filed 12 December 1962.)

**Master and Servant § 65—**

Evidence that plaintiff suffered a coronary occlusion while rolling a heavy rope net in the course of his employment, with medical expert testimony that the exercise could not be the cause of the condition although the attack might have been excelerated or precipitated by the exertion, *is held* insufficient to sustain a finding that the coronary occlusion and resulting myocardial infarction arose out of and in the course of the employment.

APPEAL by employer and its insurance carrier from *McKinnon, J.,* March, 1962, Term, BRUNSWICK Superior Court.

This proceeding originated before the North Carolina Industrial Commission as a compensation claim filed against Morace Stevedoring Company by Hiram Van Bellamy for injuries resulting from an industrial accident. The employment, the insurance, weekly wages, and other jurisdictional facts were found by the deputy commissioner upon competent evidence.

The deputy commissioner, after hearing, found the claimant since 1955 had been employed as a carpenter by the present employer and its predecessor, Sunny Point Army Terminal. The deputy commissioner's further findings are:

"(4)   On March 3, 1961, plaintiff reported for work shortly before 8:00 A.M. and plaintiff and his brother Lee Bellamy were instructed to get two four-wheeled trucks which were located on the dock. In order to get the trucks to the desired place, plaintiff and his brother had to move two pallets weighing about 400 pounds each and to partially lift, roll and move two safety nets made of heavy rope weighing 500 pounds or more each. While lifting the second net, plaintiff sustained pain in his chest and became sick at his stomach. It was unusual for plaintiff to do such heavy and strenuous lifting and same was usually done by stevedores or longshoremen who are younger and much stronger men than plaintiff.

"(5)   Plaintiff was hospitalized from March 3, 1960, to April 14, 1960. A diagnosis of coronary occlusion with myocardial infarction was made. Plaintiff reached the end of the healing period on January 25, 1961, and has at least a 50 per cent incapacity for work due to his residual heart condition presently diagnosed as angina pectoris.

"(6)   On March 3, 1960, plaintiff sustained an injury by accident arising out of and in the course of his employment with Morace, which precipitated and resulted in a coronary occlusion with myocardial infarction with a present diagnosis of angina pectoris."

The deputy commissioner awarded compensation based on the claimant's weekly wages. The employer and the carrier applied for and were granted a review by the full commission upon specifically assigned errors. After hearing, the full commission adopted as its own the findings and conclusions of the deputy commissioner and affirmed the award. The employer and the insurance carrier appealed to the superior court. After hearing on the record, the superior court overruled, seriatim, all exceptions, and affirmed the award. The employer and the carrier appealed.

*Bowman and Prevatte by James C. Bowman for plaintiff appellee.*
*Poisson, Marshall, Barnhill & Williams, by Lonnie B. Williams for defendants, appellants.*

HIGGINS, J.   The claimant testified as a witness in his own behalf: "I remember the morning of March 3, 1960. I was sick a little bit before I left home and then I vomited and I got all right, and then I went . . . down to Sunny Point . . . I moved the first net two or three feet . . . just enough to get by . . . there were two of them . . . Well,

when I got so I started to moving it good, I taken a pain in my breast, so I went in the box car and told this man I was sick. He said go to the office, so I did so, . . . I vomited and was just as sick as I could be. . . . I was hurting in my breast and arm."

On cross-examination, he testified: "When I moved them, I mean I rolled them. . . . I had not rolled nets too many times before. It's part of a carpenter's duties if he is asked to. . . .There was one man helping me roll the net. . . . I was rolling the net, . . . There was no lifting involved."

Claimant was a carpenter, 65 years of age. The defendant's evidence indicated that the work of moving nets, etc., was usually done by longshoremen. However, this duty was sometimes assigned to carpenters. In moving a net, "it is rolled similar to a barrel."

The claimant's medical expert, a specialist in the field of "heart conditions," in response to a hypothetical question involving the effect of physical exertion, said: "I think it might have been a precipitating or a hastening factor in this situation. As far as being the underlying cause, generally speaking, it is not. I don't think it would be in this case. * * * This man also, besides being at an age where he had a fair amount of arteriosclerosis, had diabetes, which accelerates the arteriosclerotic hardening process, or narrowing or hardening of the arteries. So that actually it happens that people who have myocardial infarction, such as he did, at least half of them have them when they are at rest . . . or when they are in bed sleeping, I should say — the other half have them when they are awake. So, generally speaking, activity has nothing to do with the production of a myocardial infarction. Now, it is true that a person who is on the verge of having such an attack, by strenuous exertion this could be accelerated or precipitated." Dr. Tidler testified the claimant told him three men were helping him.

We conclude that so much of finding of fact No. 4 as relates to the heavy and strenuous lifting usually done by younger and much stronger men does not find support in the evidence. Finding No. 5 relates to diagnosis and treatment after the disability. Finding No. 6 must be treated as a conclusion and not a finding of fact.

This case is very similar to, no stronger than, and governed by, the decision in *Lewter v. Enterprises, Inc.*, 240 N.C. 399, 82 S.E. 2d 410, from which we quote:

"Ordinarily a death from heart disease is not an injury by accident arising out of and in the course of the employment, nor an occupational disease, so as to be compensable under our statute. * * *

"There was medical evidence to the effect that the fire (in the theater where she worked) and Mrs. Lewter's excitement would have

aggravated her condition to such an extent as to cause the cerebral hemorrhage from which she died.

"In our opinion, there is no evidence tending to show that Mrs. Lewter died as a result of an injury, as those words are used in our Workmen's Compensation Act. This is in accord with our decisions in *Neely v. Statesville, supra,* (212 N.C. 365, 193 S.E. 664)." *Gilmore v. Board of Education,* 222 N.C. 358, 23 S.E. 2d 292; *McGill v. Lumberton,* 215 N.C. 752, 3 S.E. 2d 324.

The evidence before the Industrial Commission, the Superior Court, and now before us, was insufficient to support any finding the claimant was engaged in strenuous lifting not usually a part of his customary duties, or that he sustained any injury by accident arising out of and in the course of his employment.

The Superior Court will remand the proceeding to the North Carolina Industrial Commission with instructions to enter an award disallowing the claim.

Reversed.