MRS. MARGARET DOWDY FERRELL, Widow, FAYE ELIZABETH FER-
RELL, Daughter, by her Next Friend, EUGENE C. BROOKS, III,
LEWIS E. FERRELL, Deceased, Employee v. MONTGOMERY & ALD-
RIDGE SALES CO., Employer; TRAVELERS INSURANCE COMPANY,
Carrier.

(Filed 20 May, 1964.)

**Master and Servant § 65—**

Where the evidence does not disclose that the employee was doing work
essentially different from that which had been customarily performed by
him over the years, his death as a result of a coronary thrombosis is not
the result of an accident within the meaning of the North Carolina Work-
men's Compensation Act.

APPEAL by defendants from *Latham, S. J.*, October, 1963 Session,
DURHAM Superior Court.

This proceeding originated as a workmen's compensation claim for
death benefits before the North Carolina Industrial Commission. Hear-
ing Commissioner Thomas made findings of fact, stated conclusions of
law, and entered an award denying the claim upon the ground the evi-
dence was insufficient to show that Lewis E. Ferrell, employee, was
injured by accident arising out of and in the course of his employment.

Upon review, the Full Commission vacated the Hearing Commis-
sioner's findings, conclusions, and award; and made findings of its own
that Lewis E. Ferrell suffered injury and death by accident arising out
of and in the course of his employment. The Commission awarded pay-
ment of benefits.

On appeal to the Superior Court, Judge Latham entered judgment
overruling the defendants' exceptions, affirmed the findings, conclusions,
and award of the Full Commission. The defendants appealed.

*Brooks & Brooks by Eugene C. Brooks, III, for plaintiff appellees.*
*Spears, Spears & Barnes by Marshall T. Spears, Jr., for defendant
appellants.*

HIGGINS, J. The evidence disclosed that Lewis E. Ferrell, on and
prior to July 28, 1961, was service manager of the appliance and ser-
vice department of Montgomery and Aldridge Sales Company—dealers
in refrigerators, ranges, and other appliances. "He was approximately
six feet tall and weighed about 180 to 190 pounds, and was a muscular
man," age 50 years. He had worked for the same employer for 17 years
and had been out for health reasons "from September 21 through Oc-
tober 19, 1959, for a back injury operation." Thereafter he lost no time
from work until his final attack on July 28, 1961.

Mr. Ferrell's duties required him to supervise the unloading from railroad cars and from trucks of shipments of "refrigerators, ranges, laundry equipment, and home freezers." Mr. J. T. Gray succeeded Mr. Ferrell as service manager. As a witness for claimants, he testified:

"Mr. Ferrell had the right to fully participate in the activity of unloading and as a matter of fact he did fully participate. He and I were at the warehouse during the time of unloading these ranges, refrigerators and other items. This was being done at the main building. . . . During my employment at Montgomery & Aldridge, I have observed him from day to day over that eight-year period. Among the jobs that came to the service department there would be required certain moving of appliances to one place or another around the building. Mr. Ferrell had the right to either participate in it or have someone else do it. He frequently engaged in the moving of things himself, by himself. * * *

"Most frequently appliances come into Durham in a railroad car, and we then have occasion to do as we were doing on July 28 and transfer the appliances by truck from the railroad car to our place of business or to our warehouse. I would say that we probably have a railroad car a month and in the winter months every other month, with some shipments in between. We also have other shipments which are less than a carload. All shipments ultimately have to be unloaded by us in our place of business. The appliances come crated. In unloading an appliance from a pickup truck, you slide it off one end on the ground. Mr. Ferrell and I might slide an appliance several inches across the bed of the pickup truck and then roll a hand truck under it and just walk off with it. It was propelled by the hand truck to the place where we wanted to put it. This was the type of thing that Mr. Ferrell was engaged in doing on the afternoon of July 28, but he wouldn't do freezers in that manner.

* * *

"This is also generally the method in which we unloaded appliances on those occasions prior to July 28, 1961. On those occasions Mr. Ferrell took part in it as he did on July 28. * * *

"During the course of the evening, (July 28) it being so warm, we had placed two or three chairs up by the big entrance door of the ramp and in between the arriving and leaving, we would sit there in an attempt to cool ourselves off. As we sat there, I noticed Mr.

Ferrell was slumped over in his chair and I asked him if he was hurting in any way and he pointed to his chest, sort of tapped himself up there and said, 'McKee,' and I immediately left to go into the office to get to the telephone and call Dr. McKee and they referred me to an answering service and they didn't know where he was and I come back out and said, 'It is time to take him to the hospital,' and I took him and put him in the truck and took him to the Watts Hospital."

Dr. Page, a medical expert, testified Mr. Ferrell died in the hospital three days after his admission as a result of "a coronary thrombosis that produced . . . a myocardial infarction. . . The autopsy shows that the causes of death of Lewis E. Ferrell were multiple, all wrapped up together, and being arteriosclerosis, . . . hypertrophy of the myocardium, thrombosis, recent, . . . He was admitted through the emergency room after the cardiogram showed changes that were compatible with . . . myocardium infarction. The patient has had vague or sharp pains of a similar nature over the past month. . . . My opinion would be that with the pre-existing disease that the labor would cause the heart attack . . . Referring to Mr. Ferrell, it would be equally fair to say that his myocardial infarction could have come about by reasons other than any exertion which he might have undergone. In a sense, it is a question of speculation as to exactly why this particular thing occurred."

Dr. Gentry, a specialist in pathology who performed the autopsy, testified: "I found that Mr. Ferrell had generalized arteriosclerosis with particular involvement of the coronary arteries. The coronary thrombus had occurred in his left ventricle descending coronary artery, and it completely occluded that artery. The anterior septum and the anterior and lateral walls of the left ventricle were infarcted by reason of this thrombus. I found that he had very old scarring diffusely throughout the myocardium with hypertrophy of the myocardium so that the heart was leaning to one side and the weight half the times of its normal weight, 540 grams, and in addition to these old changes and this recent change which I have described consisted of the infarct which had the characteristic of being of the same age of the thrombus."

In response to a question regarding Mr. Ferrell's activities of two or two and one-half hours prior to the onset of the chest pains, Dr. Gentry testified: "This is considered an unanswered question as to whether there is any real correlation between activity or emotion and the formation of a thrombus . . . It is well established that activity

and emotion can bring about an infarction . . . in the face of narrowed vessels. This is known, but it is not known whether the emotional or physical stress can precipitate the actual occlusion such as this man had. I would say it would be highly unlikely for this thrombus to have occurred in Mr. Ferrell if he had not been suffering from arteriosclerosis."

The sole question in this appeal is: Did the death of Lewis E. Ferrell result from "injury by accident within the meaning of the North Carolina Workmen's Compensation Act?" The claimants cite *Gabriel v. Newton,* 227 N.C. 314, 42 S.E. 2d 96, in support of their contention that Mr. Ferrell, because of his extra exertion immediately before his attack, suffered an injury by accident. The evidence fails to show he did any work essentially different from that which had been his custom over the years. This case, therefore, is controlled and governed by *Slade v. Hosiery Mills,* 209 N.C. 823, 184 S.E. 844; *Neely v. Statesville,* 212 N.C. 365, 193 S.E. 664; *West v. Department of Conservation and Development,* 229 N.C. 232, 49 S.E. 2d 398; and especially, by *Lewter v. Abercrombie Enterprises, Inc.,* 240 N.C. 399, 82 S.E. 2d 410; and *Bellamy v. Stevedoring Co.,* 258 N.C. 327, 128 S.E. 2d 395.

The case was fully developed before the Industrial Commission, well briefed, and ably argued here. We conclude, however, the evidence is insufficient to show Mr. Ferrell suffered injury by accident within the meaning of our Workmen's Compensation Act. For that reason, the judgment entered in the Superior Court of Durham County is reversed. The cause will be remanded to the North Carolina Industrial Commission for the entry of an award denying compensation.

Reversed.