RACHEL D. JACKSON, WIDOW AND NEXT FRIEND OF KENON ELTON JACKSON, CARLTON EDSELL JACKSON AND KAREN ELACO JACKSON, KENON JACKSON, DECEASED EMPLOYEE, v. NORTH CAROLINA STATE HIGHWAY COMMISSION, EMPLOYER, SELF-INSURER.

(Filed 2 February, 1968.)

**1. Master and Servant § 93—**

The findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, but the Commission's legal conclusions are reviewable.

**2. Master and Servant § 53—**

To be compensable under the Workmen's Compensation Act the injury must have resulted from accident.

**3. Master and Servant § 65—**

Where the evidence discloses that the employee was carrying on his usual work in the usual and customary way, his death as the result of a heart attack is not the result of an accident within the meaning of the North Carolina Workmen's Compensation Act.

PARKER, C.J., dissents.

APPEAL by plaintiffs from *Mallard, J.,* January, 1967 Civil Session, JOHNSTON Superior Court.

This proceeding originated before the North Carolina Industrial Commission as a compensation claim for death benefits filed by the widow, Rachel D. Jackson, and Kenon Elton Jackson, Carlton Edsell Jackson and Karen Elaco Jackson, minor children of the deceased employee, Kenon Jackson. The parties stipulated: (1) The Employee-employer relationship existed between the deceased employee and the North Carolina Highway Commission, the self-insured employer; (2) The parties were subject to and bound by the North Carolina Workmen's Compensation Act; and (3) The employee's average weekly wage was $89.07.

The evidence on behalf of the claimants disclosed that Kenon

Jackson, at the time of his death, was 48 years of age. He had been employed by the defendant for more than 20 years and had operated a motor grader for 18 or 19 years. In October, 1961 he had a myocardial infarction, was treated by Dr. Thomas Cheek, and after a good recovery, returned to his former employment with the defendant in March, 1962. Dr. Cheek testified he had advised regular hours and rest. Mr. Jackson, in the opinion of the witness, was able to go back to work. He expressed the opinion that Mr. Jackson's work for a 9 hour day, and then for additional periods at night, could have caused the coronary thrombosis which produced death.

Dr. George Kokiko performed an autopsy and testified as a witness for the Highway Commission that he found evidence there was a hypertrophy, a large diseased heart, further complicated by a cardiac condition which was on the way to producing what is known as a myocardial aneurysm. Dr. Kokiko expressed the opinion the condition of the heart was such that death could have occurred "anywhere at any time." The cause of death was, in layman's terminology, a cardiac stroke, meaning a heart attack. He had a diseased heart and eventually that heart was going to cause his death. With regard to whether certain activities over a period of time on the part of a person with a heart condition would be more likely to bring on a heart attack than other activities, Dr. Kokiko testified: "I don't think you can say that. I do not know whether some activities are more likely to bring on a heart attack than other activities. This depends on the individual and his past medical history. In this case I would say that there is a possibility that any number of activities, including those about which defendant has asked me, could bring on a heart attack. This is a diseased heart. We don't know what could have caused it. We are dealing in terms of possibilities."

Hearing Commissioner Thomas made, among others, these findings:

"3. Deceased was born on September 22, 1915, and prior to his death on February 27, 1963, had been employed by defendant for 20 years or more, and had operated a motor grader for the past 18 or 19 years. In October, 1961, deceased had a myocardial infarction, was treated by Dr. Thomas Cheek of Smithfield, was hospitalized for a while, and was out of work until March, 1962. Deceased made a good recovery from his heart attack.

4. Deceased was assigned to a crew in the northwest corner of Johnston County. On February 26, 1963, a heavy snow fell. Deceased kept the motor grader he operated at his home and de-

parted from his home about 7:00 A.M. on February 26, 1963. Deceased operated the motor grader for a while and as it began raining, deceased and other employees 'stood by' at a store for some time.

5.  Deceased then returned to operating the motor grader and at 4:00 or 5:00 P.M. was observed at the intersection of Highway 70 and N.C. 42 near Clayton, where deceased pulled a truck operated by Wilson Jones out of a ditch. About 5:00 P.M. deceased was told to go home and eat by his foreman, M. D. Wallace, and deceased then went home, ate and rested. At about 8:00 P.M., Wallace called deceased on the telephone and told him to return to scraping snow.

6.  Deceased was observed by some of his co-workers operating the grader at about 11:00 P.M. and again at midnight, and at 12:10 A.M. on February 27, 1963, Wallace talked to deceased and advised him to change the blade to push the snow into the median. The blade change was made hydraulically. Deceased was then headed west on Highway 70 about one mile west of Smithfield. Wallace again observed deceased in the motor grader near the same place but headed east. The motor grader was stopped on the right shoulder with the right front wheel in a shallow ditch and a 4″ by 4″ pine post had been knocked down by the motor grader.

7.  Wallace observed that deceased was in the cab of the motor grader, slumped over to the right, and the heater running, and headlights and flasher lights burning, and the motor choked down. Wallace determined that deceased had no pulse and that he was dead. Wallace observed no cuts or blood on the deceased and neither did J. P. Walters, maintenance supervisor for defendant in Johnston County, who saw deceased shortly after he was found by Wallace.

8.  Autopsy performed on the body of the deceased at 3:00 P.M. on February 27, 1963, by Dr. G. V. Kokiko revealed, among other things, that deceased's heart was markedly enlarged, that deceased had had a large, old myocardial infarction involving the left ventricle, apex and posterior wall, with fibrosis and aneurysmal dilitation, severe atheroscleorsis and acute coronary occlusion. Cause of death was acute occlusion of the left coronary artery. Supplementary autopsy performed on March 14, 1963, revealed that deceased's brain was within normal limits. No external lesions were noted on deceased's body upon autopsy.

9. Deceased did not sustain an injury by accident arising out of and in the course of his employment with defendant."

Hearing Commissioner Thomas concluded that the claim for compensation should be denied. The claimants appealed to the Full Commission, which adopted the findings and conclusions of the Hearing Commissioner and affirmed the award. The claimants filed detailed exceptions and asked for a review by the Superior Court. Judge Mallard overruled the exceptions and assignments of error and entered judgment affirming the Commission's award, denying compensation.

The claimants excepted and appealed.

*Thomas Wade Bruton, Attorney General; Harrison Lewis, Deputy Attorney General; Henry T. Rosser, Assistant Attorney General; Fred P. Parker, III, Staff Attorney, for defendant appellee.*

*Teague, Johnson, Patterson, Dilthey & Clay by G. S. Patterson, Jr., for plaintiff appellants.*

HIGGINS, J. Under the Workmen's Compensation Act, the North Carolina Industrial Commission is constituted the agency to hear evidence, resolve conflicts therein, make findings of fact, and state its conclusions. If the findings are supported by competent evidence, they are conclusive on the courts. *Osborne v. Ice Co.,* 249 N.C. 387, 106 S.E. 2d 573; *Vause v. Equipment Co.,* 233 N.C. 88, 63 S.E. 2d 173; *Riddick v. Cedar Works,* 227 N.C. 647, 43 S.E. 2d 850. However, the Commission's legal conclusions are subject to court review. *Ballenger Paving Co. v. Highway Comm.,* 258 N.C. 691, 129 S.E. 2d 245; *Brice v. Salvage Co.,* 249 N.C. 74, 105 S.E. 2d 439. In order to support the claim, the death must result from accident. " 'Death from injury by accident implies a result produced by fortuitous cause. . . . There must be an accident followed by an injury by such accident which results in harm to the employee before it is compensable under our statute.' Absent accident (fortuitous event), death or injury of an employee while performing his regular duties in the 'usual and customary manner' is not compensable." *O'Mary v. Land Clearing Corp.,* 261 N.C. 508, 135 S.E. 2d 193; *Slade v. Hosiery Mills,* 209 N.C. 823, 184 S.E. 844. "The language used as well as the conclusions reached have supported the interpretation that an injury and accident are separate and that there must be an accident which produced the injury before the employee can be awarded compensation." *Hensley v. Cooperative,* 246 N.C. 274, 98 S.E. 2d 289; *Buchanan v. State Highway Comm.,* 217 N.C. 173, 7 S.E. 2d 382.

This Court has held that extra exertion by the employee, resulting in injury, may qualify as an injury by accident. *Gabriel v. New-*

*ton,* 227 N.C. 314, 42 S.E. 2d 96. But this holding allowed compensation because the extra and unusual exertion was accidental and had produced the original heart attack by placing an extra strain on the heart. Some of the cases in which the unusual strain theory was determinative are: *Wyatt v. Sharp,* 239 N.C. 655, 80 S.E. 2d 762; *Anderson v. Northwestern Motor Co.,* 233 N.C. 372, 64 S.E. 2d 265; *Gabriel v. Newton, supra; Doggett v. Warehouse Co.,* 212 N.C. 599, 194 S.E. 111. These cases on which the claimants rely do not fit the condition of Mr. Jackson as shown by the evidence and as found by the Commission. The controlling cases hold that death from heart attacks which occur in the usual course of employment are not compensable. *Andrews v. County of Pitt,* 269 N.C. 577, 153 S.E. 2d 67; *Ferrell v. Sales Co.,* 262 N.C. 76, 136 S.E. 2d 227; *Bellamy v. Stevedoring Co.,* 258 N.C. 327, 128 S.E. 2d 395; *Lewter v. Enterprises, Inc.,* 240 N.C. 399, 82 S.E. 2d 410.

When one is carrying on his usual work in the usual way and suffers a heart attack, the injury does not arise by accident out of and in the course of employment. In this case, Mr. Jackson was operating a motor grader removing snow from the highway. The evidence and findings are that he was by himself; that the motor grader stopped and a considerable time thereafter he was found slumped over in the cab of the grader. Death had resulted from what proved to be a massive coronary occlusion. He was on call for extra hours, but had had periods of rest. The extra hours on call were customary when, by weather conditions, there was need for the use of the machine he operated. The operation of the machine was not exacting physically. The hours during which Mr. Jackson was on duty were usual and customary when the conditions required the use of the scraper to open the section of the highway assigned to him. Mr. Jackson had been performing this same service for 18 years except for the time he was recovering from a prior heart attack.

The evidence in this case was sufficient to justify the Commission in findings of fact and concluding therefrom that Mr. Jackson's death was not caused by accident arising out of and in the course of his employment. The judgment entered in the Superior Court is

Affirmed.

PARKER, C.J., dissents.