CHARLES W. HILLIARD, EMPLOYEE, PLAINTIFF v. APEX CABINET COMPANY, EMPLOYER, DEFENDANT; AMERICAN MUTUAL LIABILITY COMPANY, CARRIER, DEFENDANT

No. 8PA82

(Filed 4 May 1982)

**Master and Servant § 94.1 — workers' compensation — inadequate findings by Commission**

  In a workers' compensation action, the Industrial Commission failed to make specific findings of fact as to the crucial questions necessary to support a conclusion as to whether plaintiff had suffered any disability as defined by G.S. 97-2(9). It was plaintiff's burden to persuade the Commission not only that he obtained no other employment but that he was *unable* to obtain other employment. There was uncontradicted medical testimony which established that plaintiff was physically capable of working in employment free from wood dust, paints, lacquer fumes and glue fumes, but plaintiff testified that he was unable to obtain other employment without a diminution in wages because of his age, lack of education and inexperience, and also testified that he had "not gone out to seek any other jobs." This conflicting testimony raised an issue of fact requiring a finding by the Commission.

  Justice EXUM concurring.

  Justice MEYER dissenting.

  Justice COPELAND joins in this dissenting opinion.

ON discretionary review, G.S. 7A-31, from the decision of the Court of Appeals, 54 N.C. App. 173,--- S.E. 2d --- (1981), affirming an Opinion and Award of the Industrial Commission denying plaintiff Charles W. Hilliard workers' compensation disability benefits.

Plaintiff Charles Hilliard worked for Apex Cabinet Company for twenty-three years. His work as a finish carpenter necessitated exposure to paint and glue fumes and to wood dust. Plaintiff developed symptoms including headaches, dizziness, shortness of breath, occasional bloody lumps in the throat or sinuses, and nosebleeds. He left his employment with the Cabinet Company in 1977.

At the hearing before the Industrial Commission, plaintiff testified that he was forced to quit his job because the symptoms he reported were caused by the dust and fumes in the air at the cabinet shop. He said he had since then worked part time doing

"small carpentry work." He testified that he could not get any other kind of work but also stated that he had "not gone out to seek any other jobs."

Dr. Herbert Seiker testified that plaintiff had developed a sensitivity syndrome to the fumes and dust in the air in the cabinet shop. He recommended that plaintiff not work in such an environment but stated that "Mr. Hilliard could work in environments which do not contain excessive amounts of fumes, chemicals and dust."

Defendant offered as exhibits four Industrial Commission forms wherein two different physicians (Drs. Baggett and Pierson) described their treatment of plaintiff. The doctors described the condition they treated as epistaxis (the clinical term for nosebleed). No mention was made of any of plaintiff's other symptoms. In the forms the doctors indicated that after treatment of plaintiff's nosebleed he could go back to work.

The Deputy Commissioner who heard the case found plaintiff to have an occupational disease called "respiratory symptoms." The Deputy Commissioner further found as a fact that "plaintiff does not have any permanent disability as a result of the injury giving rise hereto" and denied plaintiff compensation for disability. The full Commission adopted as its own the Opinion and Award of the Deputy Commissioner.

The Court of Appeals (Becton, J., with Martin and Martin, JJ., concurring) affirmed on the ground that plaintiff had failed to show that his diminution of wages was due to the occupational disease.

*Jeff Erick Essen and Grover C. McCain, Jr., for plaintiff-appellant.*

*Teague, Campbell, Conely & Dennis, by C. Woodrow Teague and George W. Dennis, III, for defendants-appellees.*

BRANCH, Chief Justice.

Plaintiff assigns error to the finding of fact of the Deputy Commissioner, affirmed by the full Industrial Commission and the Court of Appeals, to the effect that plaintiff "does not have any permanent disability as a result of the injury giving rise hereto." He argues that the determination of whether a disability exists is

a conclusion of law and that said conclusion must be based upon findings of fact supported by competent evidence. We agree.

The necessary factual basis for a determination of disability is set out in G.S. 97-2(9).

> Disability. — The term "disability" means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.

We are of the opinion that in order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury. *See Watkins v. Motor Lines*, 279 N.C. 132, 181 S.E. 2d 588 (1971). In workers' compensation cases, a claimant ordinarily has the burden of proving both the existence of his disability and its degree. *Hall v. Chevrolet Co.*, 263 N.C. 569, 575, 139 S.E. 2d 857, 861 (1965).

In passing upon issues of fact, the Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. The Commission may accept or reject the testimony of a witness solely on the basis of whether it believes the witness or not. *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 (1951). The findings of the Industrial Commission are conclusive on appeal when supported by competent evidence even though there be evidence to support a contrary finding. *Taylor v. Twin City Club*, 260 N.C. 435, 132 S.E. 2d 865 (1963); *Conner v. Rubber Co.*, 244 N.C. 516, 94 S.E. 2d 486 (1956). However, the Commission's legal conclusions are reviewable by the appellate courts. *Jackson v. Highway Commission*, 272 N.C. 697, 158 S.E. 2d 865 (1968). It is equally well settled that when the findings are insufficient to determine the rights of the parties, the court may remand to the Industrial Commission for additional findings. *Byers v. Highway Comm.*, 275 N.C. 229, 166 S.E. 2d 649 (1969); *Brice v. Salvage Co.*, 249 N.C. 74, 105 S.E. 2d 439 (1958).

In instant case it was plaintiff's burden to persuade the Commission not only that he had obtained no other employment but that he was *unable* to obtain other employment.

A plaintiff must adduce, in cases where he is physically able to work, evidence that he is unsuited for employment due to characteristics peculiar to him. *Little v. Food Service,* 295 N.C. 527, 246 S.E. 2d 743 (1978).

In *Little* plaintiff suffered an injury to her spinal cord which according to medical testimony rendered her incapable of returning to her former employment as a laborer. Plaintiff, a fifty-year-old obese woman with an eighth grade education, was prevented from offering her own testimony as to total disability by the hearing officer's statement that such testimony was unnecessary. Noting that "if other pre-existing conditions such as an employee's age, education and work experience are such that an injury causes him a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the incapacity which he or she suffers, and not for the degree of disability which would be suffered by someone with superior education or work experience or who is younger or in better health," the court remanded for the purpose of affording the plaintiff an opportunity to present evidence relevant to her capacity to work and earn wages. *Id.* at 532, 246 S.E. 2d at 746.

Instant case differs from *Little* in that the record does not disclose that the Commission limited plaintiff in his testimony concerning his capacity to work and earn wages. Here the uncontradicted medical testimony establishes that plaintiff was physically capable of working in employment free from wood dust, paints and lacquer fumes and glue fumes. In this connection plaintiff testified that he was unable to obtain other employment without a diminution in wages because of his age, lack of education and inexperience. He also testified that he had "not gone out to seek any other jobs." This conflicting testimony raised an issue of fact requiring a finding by the Commission. In making that finding, the Commission was free to accept or reject all or any part of plaintiff's testimony. *Anderson v. Motor Co., supra.*

The Industrial Commission failed to make specific findings of fact as to the crucial questions necessary to support a conclusion as to whether plaintiff had suffered any disability as defined by G.S. 97-2(9). *Guest v. Iron and Metal Co.,* 241 N.C. 448, 85 S.E. 2d 596 (1955). This Court is therefore unable to determine whether adequate basis exists, either in fact or law, for the Commission's

award. This cause is remanded to the Court of Appeals with direction that it be remanded to the Industrial Commission for proceedings consistent with this opinion.

Reversed and remanded.

Justice EXUM concurring.

Although concurring in the majority's decision to reverse the Court of Appeals and to remand this case to the Industrial Commission, I would remand it with instructions that if the Commission believes the evidence claimant has offered, it should make an award that would compensate him for the diminution in his earning capacity to which all the evidence shows him entitled.

I agree with the majority that the Commission's so-called finding of fact that "[p]laintiff does not have any permanent disability as a result of the injury" is a conclusion of law fully reviewable by this Court. My view, however, is that this conclusion is not only unsupported by other findings of the Commission, but that all the evidence shows claimant to have suffered a diminution in earning capacity as a result of an occupational disease. If this evidence is believed, he is entitled to be compensated. I disagree with the majority's view that there is a conflict in the evidence which needs resolution by the Commission.

Dr. Sieker testified without contradiction that claimant had developed a "sensitivity" to dust, glue fumes, and paint fumes due to his long exposure to these things as a cabinet maker. These things were irritants to claimant's respiratory system and caused him to suffer nasal congestion, nosebleeds, headaches and shortness of breath. Dr. Sieker recommended that claimant not return to his work environment, but his opinion was that claimant could work in other environments that are free "of fumes, chemicals and dust."

Claimant testified, again without contradiction, that he had worked all of his adult life as either a farmer or a carpenter and was not qualified because of lack of education and training to do anything else. He said:

Q. Have you tried to do any other kind of work other than carpentry work that does not take you around a glue or paint

and lacquer fumes or wood dust? Do you know any other kind of work?

A. No, I haven't been, but the reason, I don't have any education and therefore I can't, and then my age I can't get no other type of work that will, that I can do other than carpentry work.

Q. Have you looked for other types of work?

A. Well, yes I have. And I just can't find anything that I can do other than carpentry work.

In my adult life, I have not done any work except for farming and carpentry.

. . .

I have been offered other jobs, but they were all in cabinet work like the work that I'm not able to do. I have not gone out to seek any other jobs. I have not attempted to get a job doing carpentry work building houses because I'm not educated enough, and even a part-time carpenter, which I have tried, has to be around the painters, varnishers and a lot of sawing.

I do not interpret this testimony to mean that claimant has not looked for jobs other than carpentry work. Indeed, claimant said he had looked for such jobs and couldn't find "anything that I can do other than carpentry work." He then said that he had been offered other work making cabinets which he was not able to do. His statement then was, "I have not gone out to seek any other jobs." Clearly when placed in context this statement means that claimant has not looked for other cabinet making jobs, for obvious reasons. He then says he has not looked for home building work and explains why. Claimant also testified that in order to somehow support himself he opened up his own cabinet shop as a sole proprietor so that he could work at will as he was able. He said, "When I develop these problems during the performance of my carpentry work, I just have to quit work until I get better. But I usually try to work when I'm able to." Claimant's last year's salary (1977) at Apex Cabinet Company was $14,820. As sole proprietor in 1978 he earned $7,114.43 and in 1979, $5,679.79.

Hilliard v. Apex Cabinet Co.

The Commission has concluded that claimant has an occupational disease which conclusion is fully supported, if not mandated, by the evidence. In light of this conclusion, it is difficult to see what else plaintiff could do to prove that he has had a diminution in earning capacity as the result of an occupational disease. The evidence mandates this conclusion unless, of course, the Commission simply disbelieves it, a position which it does not seem to have taken. Rather, it seems to have taken, erroneously, the position that the evidence, even if believed, does not as a matter of law show that plaintiff's diminution in earning capacity is compensable.

This is not a case where a claimant has sat back and done nothing to find other suitable work. This claimant has, by all the evidence, done the best he could, given the existence of his occupational disease, to minimize his loss. He should not be penalized because he has chosen to work as much as he is able in a sole proprietorship doing the only work which, according to all the evidence, he is qualified by education and training to do.

Justice MEYER dissenting.

I must respectfully dissent. At the outset, I must say that I fully concur with the position of the majority that in order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment; (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment; and (3) that this individual's incapacity to earn was caused by plaintiff's injury. Based upon these findings, the Commission may make a conclusion of law that the claimant is "disabled" within the meaning of the Workers' Compensation Act. Recognition by the hearing officers and the Commission of the necessity of such findings and based thereon an appropriate conclusion of law as to whether a claimant is disabled or not disabled would avoid needless and wasteful appellate review based upon allegations of inadequate and inappropriate findings and conclusions of law.

While recognizing that problem in the judgment and award in the case before us, I am compelled to say that I believe this Court should have proceeded to determine whether there is suffi-

cient evidence in the record to support the finding of fact of the Deputy Commissioner, affirmed by the full Industrial Commission and the Court of Appeals, to the effect that plaintiff "does not have any permanent disability . . . ." The majority opinion fails to observe the principle of law that the findings of the Commission are *conclusive* on appeal when supported by competent evidence even though there is evidence to support a contrary finding. The evidence here overwhelmingly supports the finding that the plaintiff does not have any permanent disability. Mr. Hilliard was examined by three doctors. Two of the doctors found only nosebleeds and made no mention of any other symptoms. When the claimant saw Dr. Baggett on 25 July 1977, he was certified to return to work that day and had no permanent disability. He saw Dr. Sieker on 13 November 1978 and he had no symptoms at that time. Dr. Sieker was of the opinion that the glue fumes, paint fumes and wood dust were irritating to Mr. Hilliard's respiratory system and would produce the symptoms of which Mr. Hilliard complained. Dr. Sieker determined that Hilliard should not return to work in that environment. Dr. Sieker's conclusion, however, which fully supports the Commission's finding that Mr. Hilliard had no permanent disability, is as follows:

I found no evidence of permanent damage to Mr. Hilliard, and did not consider him to be disabled from other types of work in a pollutant-free environment.

On cross-examination, Dr. Sieker further testified in pertinent part:

In my medical reports I found that Mr. Hilliard presented symptoms aggravated by occupational exposure, with no evidence of permanent damage. . . .

As stated in my letter dated August 3, 1979, to Mr. McCain, I felt that Mr. Hilliard could work in environments which do not contain excessive amounts of fumes, chemicals and dust . . . .

Not only is there more than adequate evidence to support the Deputy Commissioner's finding of no permanent disability, there is in my opinion insufficient evidence to support the Deputy Commissioner's finding of an occupational disease. The "disease" found by the Deputy Commissioner was "respiratory symptoms."

The description "respiratory symptoms" or "sensitivity syndrome" or words to that effect are the only terms used by the medical witness to describe Mr. Hilliard's condition. Symptoms are nothing more than manifestations of an underlying causation. "Respiratory symptoms" is nothing but a term describing manifestations — manifestations which accompany any number of ordinary diseases of life such as emphysema, bronchitis, pneumonia, etc. "Sensitivity syndrome" is likewise used to describe the manifestations of exposure to such items as grass, household dust, detergents, and other agents which may not be even remotely related to conditions of the work place.

In my view, the Commission must address the question of whether "respiratory symptoms" is a compensable disease under our Workers' Compensation Act. Since the claimant's "disease" is not one of those specifically enumerated in G.S. § 97-53, in order to be compensable, it must fall within subsection (13) which specifically requires the presence of a "disease" and excludes "all ordinary diseases of life." This section of the Act is meant to compensate for occupational *diseases.* If there is an identifiable "disease" which causes this claimant's respiratory symptoms, that is another matter. Here there have been findings only of symptoms or sensitivity. The evidence before us suggests that the claimant suffers no permanent damage and that his "respiratory symptoms" are triggered not by disease but by agents peculiar to his work place. The medical evidence clearly suggests that a work place free of wood-glue fumes, paint fumes and wood dust would not trigger claimant's symptoms.

I do not find the case of *Little v. Food Service,* 295 N.C. 527, 246 S.E. 2d 743 (1978), apposite here. In that case, this Court found to be error the trial judge's refusal to allow Mrs. Little to testify on her own behalf to the effect that she was unsuited for employment due to characteristics peculiar to herself. Here no question has been raised concerning the right of the claimant to testify in this regard. Indeed, in the case before us the claimant in fact testified that:

I have been offered other jobs, but they were all in cabinet work like the work that I'm not able to do. I have not gone out to seek any other jobs. I have not attempted to get a job doing carpentry work building houses because I'm not

educated enough, and even a part-time carpenter, which I have tried, has to be around the painters, varnishers and a lot of sawing.

I am not familiar with the construction of homes but have seen houses framed. It is true that framing houses does not include painting until it comes to the finishing, which is what I've always done. I have not tried to do any construction work like from the start of a house, because I do not feel that I would be dependable because of my condition.

This was precisely the type of testimony that Mrs. Little was not permitted to give and which was the sole reason for the remand in *Little.*

Even the majority recognizes that the uncontradicted medical testimony establishes that plaintiff was physically capable of working in employment free from wood dust, paint and lacquer fumes and glue fumes. Because of the peculiar circumstances of this case, I do not believe that the claimant, on his testimony alone, can establish that he is "disabled." The "disablement" here must be supported by medical testimony. The claimant's condition here is not an *objective* condition discernible by visual observation of the Deputy Commissioner; it is a *subjective* condition which can be determined with reasonable certainty only by a medical expert. *See Gillikin v. Burbage,* 263 N.C. 317, 139 S.E. 2d 753 (1965); *Huskins v. Feldspar Corp.,* 241 N.C. 128, 84 S.E. 2d 645 (1954); *Singleton v. Mica Co.,* 235 N.C. 315, 69 S.E. 2d 707 (1952).

For these reasons I would vote to affirm the decision of the Court of Appeals.

Justice COPELAND joins in this dissenting opinion.