STEELMAN, Judge.
 

 Defendants, Nash Health Care Systems, Inc. (NHC) and Royal & Sunalliance Insurance Co. appeal an opinion and award concluding that plaintiff, Susan Vaughan, is temporarily and totally disabled and awarding her medical expenses. For the reasons discussed herein, we affirm the determination of the Industrial Commission (Commission).
 

 At the time of plaintiff's hearing before the Commission, she was forty-eight years old and a registered nurse. She had been employed by NHC for eleven years as perinatal educationcoordinator, where she developed educational programs for hospital patients and members of the general public. Plaintiff has a long history of recurrent perilymphatic fistulas, starting in the early 1980s. A perilymphatic fistula is a tract or opening, which allows passage of inner ear fluid from the inner ear to the middle ear. There are various causes of perilymphatic fistulas, including trauma, exertion, and congenital malformations. Among the symptoms of a perilymphatic fistulas are dizziness, disequilibrium, vertigo, and nausea. Plaintiff had four fistulas prior to January 2000, each requiring surgical repairs causing her to miss time from work. Plaintiff did not file a workers' compensation claim as to any of the prior fistulas. In 1998, following surgery to repair the fourth fistula, plaintiff's treating physician imposed permanent restrictions on bending, stooping, squatting, straining, and lifting. Plaintiff informed NHC of these restrictions and NHC took steps to accommodate them, allowing plaintiff to delegate restricted tasks to an assistant, if one was available. Plaintiff occasionally experienced dizziness as a residual effect of her prior fistulas, but was able to perform her regular job duties.
 

 On the evening of 13 January 2000 plaintiff worked late to manually bind handbooks for a class that night. Whenever plaintiff was unable to find someone to assist her, she would perform the activity herself. In order to bind the handbooks, plaintiff had to copy the handbooks, punch small square holes along the entire length of the paper, and bind them. The hole-punching machine was large and required plaintiff to stand and apply sufficient force topunch the holes. Plaintiff undertook to bind twelve relatively large handbooks consisting of approximately fifty pages. Normally plaintiff would divide the books into thirds to punch holes in the paper. On this occasion, plaintiff was in a hurry and no clerical staff was available to assist her, so she divided the books in half. In order to perforate the unusually large stacks of paper, plaintiff had to apply more force than usual to the hole-punching machine. Plaintiff was unable to perforate the paper and had to reorganize the paper into smaller stacks. While straining to punch holes and bind the handbooks, plaintiff became dizzy and felt off-balance. She was able to finish binding the books, after which she delivered them to the classroom and drove home. She stated she had felt fine up until the point she started binding the handbooks. Two weeks prior to the 13 January 2000 incident, Dr. James S. May performed a routine follow-up examination of plaintiff, at which time he found no ongoing symptoms of her perilymphatic fistula.
 

 In the days following the 13 January 2000 incident plaintiff's symptoms grew worse. She attempted to continue working, but was unable to do so on a consistent basis. On 3 February 2000, Dr. May diagnosed plaintiff with a new perilymphatic fistula. In March 2000, Dr. May surgically repaired plaintiff's fifth perilymphatic fistula. Initially plaintiff's symptoms of dizziness and disequilibrium improved, but she began to feel progressively worse beginning approximately two weeks after her surgery. Plaintiff participated in vestibular rehabilitation in an effort to retrainher central nervous system to accommodate irregularities in her vestibular mechanism, but this was unsuccessful.
 

 Dr. May testified that plaintiff had obtained maximum medical improvement of the fistula. He imposed more stringent permanent physical limitations on plaintiff. These restriction prohibited plaintiff from bending her head below heart-level, lying flat in bed, lifting in excess of twenty-five pounds, bending, stooping, squatting, straining, working with machinery, and traveling in a car for any length of time. Dr. May was unable to identify any employment plaintiff was capable of performing in light of her permanent physical limitations. The Full Commission found that plaintiff suffered a compensable injury by accident when she applied excessive force while binding books, and as a result was totally disabled from working. The Commission awarded plaintiff temporary total disability at the weekly rate of $588.00 and instructed defendants to pay for all medical expenses plaintiff had incurred or would incur as a result of her compensable injury. Defendants appeal.
 

 Our review of an award by the Industrial Commission is limited to: (1) whether there was any competent evidence before the Commission to support its findings; and (2) whether such findings support its legal conclusions.
 
 Lewis v. Orkand Corp.,
 

 147 N.C. App. 742
 
 , 744,
 
 556 S.E.2d 685
 
 , 687 (2001). Findings of fact from an opinion and award of the Commission, if supported, are deemed conclusive, even if there is evidence that would support findings to the contrary.
 

 Id.
 

 On appeal this Court does not weigh theevidence, as the Commission is the "sole judge of the weight and credibility of the evidence[.]"
 
 Deese v. Champion Int'l Corp.,
 

 352 N.C. 109
 
 , 116,
 
 530 S.E.2d 549
 
 , 553 (2000). Instead our "duty goes no further than to determine whether the record contains any evidence tending to support the finding."
 
 Adams v. AVX Corp.,
 

 349 N.C. 676
 
 , 681,
 
 509 S.E.2d 411
 
 , 414 (1998),
 
 reh'g denied,
 

 350 N.C. 108
 
 ,
 
 532 S.E.2d 522
 
 (1999) (citations omitted). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence."
 

 Id.
 

 In defendants' first assignment of error they contend the Commission erred in finding as fact that plaintiff applied excessive force in the act of book binding.
 

 To be compensable under the Workmen's Compensation Act, an injury must result from an accident arising out of and in the course of the employment.
 
 N.C. Gen. Stat. § 97-2
 
 (6) (2003). The claimant bears the burden of proving an injury by accident.
 
 Morrison v. Burlington Indus.,
 

 304 N.C. 1
 
 , 13,
 
 282 S.E.2d 458
 
 , 467 (1981). Plaintiff may prove an injury by accident if she can demonstrate she exerted an extra or unusual degree of physical force while performing a job.
 
 Jackson v. North Carolina State Highway Comm'n,
 

 272 N.C. 697
 
 , 700,
 
 158 S.E.2d 865
 
 , 868 (1968).
 

 Here, plaintiff testified that when binding the books it caused her to strain since she was using a manual binder and had to apply sufficient physical force to be able to punch the holes inthe pages of the books. (T. 26-27; 42-3) She testified she was in a hurry and had no other clerical staff to assist her, and as a result she attempted to punch holes in an unusually thick stack of paper. Consequently, there was competent evidence before the Commission from which it could find that plaintiff applied more force than ususal in the act of binding the handbooks. This assignment of error is without merit.
 

 In defendants' second assignment of error they contend the Commission erred in finding plaintiff sustained a compensable injury because the expert medical testimony presented by plaintiff did not establish medical causation.
 

 The North Carolina Supreme Court has stated that "only an expert can give competent opinion evidence as to the cause of the injury" where the issue of causation is complicated.
 
 Holley v. ACTS, Inc.,
 

 357 N.C. 228
 
 , 232,
 
 581 S.E.2d 750
 
 , 753 (2003). The opinion testimony presented cannot be based solely on "speculation and conjecture."
 

 Id.
 

 If it were, it would not be, "sufficiently reliable to qualify as competent evidence on issues of medical causation."
 

 Id.
 

 To be sufficient, the expert's opinion testimony must "take the case out of the realm of conjecture and remote possibility . . . ."
 

 Id.
 

 Furthermore, a physician's opinion may be based wholly or in part on statements made to him by the patient in the course of treatment or examination.
 
 Penland v. Bird Coal Co.,
 

 246 N.C. 26
 
 , 31,
 
 97 S.E.2d 432
 
 , 436 (1957).
 

 Dr. May was plaintiff's treating physician. The parties stipulated he was an expert in the field of otolaryngology. Otolaryngology is the medical and surgical treatment of diseases and disorders of the ear, nose, and throat. Dr. May based his medical opinion on his own experience in seeing patients with similar problems, plaintiff's medical history, and statements made by plaintiff to him during the course of treatment. He diagnosed plaintiff as having a new perilymphatic fistula. Dr. May stated that the straining involved in book binding activities was consistent with the type of activity that could cause a fistula. He testified that the exertion of enough pressure to cause a "Valsalva," that is where an individual has to close their glottis or their vocal cords and go "umph," indicates a person is lifting too much or straining too hard, which could result in a fistula. (T 25). Dr. May further stated he believed to a reasonable medical degree of certainty the fistula resulted from plaintiff's excessive straining while engaged in book binding activities at work on 13 January 2000. (T. 31, 59-60) Defendants contend that because Dr. May was unable to say whether the lifting of the boxes or the punching of the holes in the paper caused the fistula, the doctor failed to establish to a reasonable degree of medical certainty what caused plaintiff's injury. In order to establish causation, an employee is not required to prove to an absolute certainty what caused the injury.
 
 Holley,
 

 357 N.C. at 234
 
 ,
 
 581 S.E.2d at 754
 
 . To require plaintiff to meet such a standard would effectively create an impossible burden that plaintiff could never meet, because it is rare that a doctor can testify as to medical causation with a hundred percent certainty. Instead, we require plaintiff to meeta lesser burden, that of "to a reasonable degree of medical certainty." Dr. May testified to that standard in this case. Thus, there was sufficient medical testimony to establish causation regarding plaintiff's injury. This assignment of error is without merit.
 

 In defendants' third and final assignment of error, they contend the Commission erred in concluding that plaintiff suffered an injury by accident within the meaning of
 
 N.C. Gen. Stat. § 97
 
 - 2(6) (2003).
 

 In order to be compensable, an injury must result from an accident arising out of and in the course of the employment.
 
 N.C. Gen. Stat. § 97-2
 
 (6) (2003). Here, the parties stipulated that on the day of the alleged incident, an employer-employee relationship existed between plaintiff and NHC. Further, defendants do not dispute that the incident arouse out of and in the course of plaintiff's employment. Therefore, the only question presented is whether the alleged incident was an injury by accident.
 

 Injury by accident is "an unlooked for and untoward event which is not expected or designed by the person who suffers the injury."
 
 Porter v. Shelby Knit, Inc.,
 

 46 N.C. App. 22
 
 , 26,
 
 264 S.E.2d 360
 
 , 363 (1980). An "accident" involves the interruption of the normal work routine and the presence of unusual conditions likely to result in unexpected consequences.
 

 Id.
 

 However, where the employee is injured while performing her regular work duties in the "usual and customary manner," it will be deemed that no "accident" occurred and the injury will not be compensable.
 

 Id.
 

 Plaintiff must demonstrate that "something unexpected and outside of her normal work duties occurred which interrupted her work routine and caused her injury."
 
 Alva v. Charlotte Mecklenburg Hosp. Auth.,
 

 118 N.C. App. 76
 
 , 80,
 
 453 S.E.2d 871
 
 , 874 (1995). It has long been established in North Carolina that an extra or unusual degree of exertion by an employee while performing a job may constitute an injury by accident, and such exertion will allow the required element of unusualness and unexpectedness to be inferred.
 
 Porter,
 

 46 N.C. App. at 27
 
 ,
 
 264 S.E.2d at 363
 
 .
 

 Defendants assert that since plaintiff was performing her normal work activities when she became dizzy, she did not sustain a compensable injury by accident. The Commission relied on
 
 Porter v. Shelby Knit, Inc.
 
 to support its decision. In
 
 Porter,
 
 this Court upheld the Commission's determination that plaintiff suffered an injury by accident when she strained to withdraw a rod from a roll of cloth which was "extra tight" and "unusually difficult" to pull out.
 

 Id.
 

 Removing the rods from the rolls of cloth was a part of plaintiff's normal work duties.
 

 Id.
 

 However, this Court stated that since there was evidence that plaintiff had to use more force than normal to remove the rods, this extra exertion interrupted plaintiff's normal work routine and the extra effort plaintiff exerted was unusual.
 

 Id.
 

 We agree that the facts in this case are analogous to those in
 
 Porter.
 
 Even though binding handbooks was part of plaintiff's normal work duties, plaintiff testified that when binding this particular set of books she strained more than normal because she was in a hurry and she had noother clerical staff to assist her, so she attempted to punch holes in a thicker stack of paper than she usually would. (T. 26-7). As discussed above, there was competent evidence to support the finding of fact that plaintiff applied excessive force in the act of binding the handbooks, and that finding in turn supports the Commission's conclusion of law that plaintiff suffered an injury by "accident." This assignment of error is without merit.
 

 AFFIRMED.
 

 Judges TYSON and BRYANT concur.
 

 Report per Rule 30(e).