PAULINE MORRISON PRESLAR, EXECUTRIX OF THE ESTATE OF GLYN G. PRES-LAR, EMPLOYEE, PLAINTIFF v. CANNON MILLS COMPANY, EMPLOYER, SELF-INSURED CARRIER-DEFENDANT

No. 8510IC705

(Filed 20 May 1986)

1. **Master and Servant § 68— workers' compensation—occupational disease—inability to work in dusty environment—finding of partial disability proper**

    A finding of fact by the Industrial Commission that an employee was partially disabled as a result of his occupational disease was supported by competent expert medical testimony that he could not work in a dusty environment.

2. **Master and Servant § 68— workers' compensation—connection between occupational disease and disability**

    Evidence that a workers' compensation claimant's environmental restriction (caused by an occupational disease) significantly limits the scope of potential employment in his or her usual vocation, when combined with other factors such as a lack of training in any other vocation, is competent to establish a causal nexus between the occupational disease and the partial or total inability to earn wages in the same or any other employment.

3. **Master and Servant § 71.1— computation of average weekly wage**

    Though a workers' compensation claimant actually worked 25 hours per week and earned $83.75, the Industrial Commission could properly find, on the basis of competent evidence, that the claimant was capable of working a full 40-hour week, and the Commission therefore properly concluded that $134 was the average weekly wage claimant was capable of earning after working for defendant.

APPEAL by defendant from the opinion and award of the North Carolina Industrial Commission filed 5 April 1985. Heard in the Court of Appeals 3 December 1985.

*Lore & McClearen, by R. James Lore, for plaintiff appellee.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr. and Caroline Hudson, for defendant appellant.*

BECTON, Judge.

In this workers' compensation case, plaintiff's decedent, Glyn Preslar, was awarded partial disability compensation under N.C. Gen. Stat. Sec. 97-30 (1985). On appeal, defendant Cannon Mills does not contest the finding and conclusion that Glyn Preslar had an occupational lung disease. Cannon Mills contends only that the Commission erred in finding and concluding that Mr. Preslar's disease caused any disability.

I

Mr. Preslar was born in 1910. In 1933, with a ninth-grade education, he started working for Cannon Mills and continued there until April 1980. During his last twenty-five years, he was a weave room foreman, which required the same physical exertion as running looms. Before Mr. Preslar left in April 1980, he was given a pulmonary function test which showed abnormal pulmonary function and reactivity to cotton dust over the work shift.

Mr. Preslar returned to work for Cannon Mills in January 1981. On 20 January 1981, as part of his application for reemployment, he completed two questionnaires and submitted to a physical examination. The examiner reported that Mr. Preslar's lungs were clear and that there was no problem with his respiratory system. But the results of the pulmonary function tests were "unsatisfactory" — they showed "evidence of reduced ventilatory capacities." Dr. Vernon A. Burkhart, Director of Health and Occupational Environment at Cannon Mills, approved Mr. Preslar for employment notwithstanding the test results.

On 21 January 1981, Dr. Burkhart signed a memorandum which reads in its entirety:

Name  Glyn George Preslar
SSN    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

The results of your pre-employment respiratory tests conducted at Cannon Mills Company are interpreted to be

within normal range. You have been found medically qualified for employment in a dust environment and to be able to wear a respirator when required.

According to Mr. Preslar, however, when he kept an appointment with Dr. Burkhart, the doctor told Mr. Preslar that he should not work in a dusty environment. Mr. Preslar quit his job as a spare weaver after only four days, but he testified at the hearing that he quit because he could not meet production. In Cannon Mills' medical file for Mr. Preslar, the following notations appear:

> Patient okayed for employment on 1/20 with unsatisfactory PFT's. Discussed with Dr. Stephens. Scheduled to see me tomorrow. V.A.B.

> Patient retired on 1/26. V.A.B.

> This 70 year old retired weave room foreman is seen with PFT evidence of reduced ventilatory capacities. He recently returned to work as spare weaver but quit after 4 days because of technical difficulty running the looms. He had a severe bout of flu in mid-January and decided to stop smoking with 55 pack year history. His exercise tolerance is excellent for his age. He denies cough. There was no recall of work related symptoms. PFT shows COPD. In the absence of a bronchitic history I assume this to be due to emphysema. I have advised him to take flu shots annually and will give pneumovax 0.5cc today; usual early treatment for URI. He should not be employed in a dusty area. V.A.B.

After leaving his job as a spare weaver, Mr. Preslar applied for other jobs at Cannon Mills in dust-free environments, but without success. He continued to reapply for about one year, but he was never called back to Cannon Mills. Meanwhile, Mr. Preslar found work through the unemployment office as a part-time janitor cleaning and waxing floors. Mr. Preslar testified that he worked four hours per day, five days per week, for an hourly wage of $3.35. He also received social security payments. Mr. Preslar testified that he could have worked eight hours per day, but only four hours were needed to do the job each day, and no additional hours were available. He stopped working after about one year because the janitorial company went out of business.

Mr. Preslar testified before the deputy commissioner that he enjoyed good health while at Cannon Mills and rarely missed work. He also stated, "I retired [in 1980] because I was 70 years old. I could have retired at age 65, but I elected to work on until I was 70." His general health remained good at the time of the hearing, except for an irregular heartbeat.

Dr. Douglas Kelling, Jr., testified as an expert witness. With regard to whether Mr. Preslar's occupational disease caused his inability to work, Dr. Kelling testified that Mr. Preslar's 1980 retirement was not a result of medical problems and that "he could have continued to work at his job at Cannon Mills." Dr. Kelling also testified that Mr. Preslar had indicated that he first experienced shortness of breath in about 1964, but that he was never so short of breath that he could not work. It was Dr. Kelling's opinion that Mr. Preslar's ability to work was limited to some extent in 1984, that he had a thirty to forty percent respiratory impairment, and that there was no significant change in his ability to work from 1980 to 1984 when Dr. Kelling examined him. Mr. Preslar was just "a little older." Dr. Kelling also testified that "I would not recommend that Mr. Preslar return to work in an area in which he would be exposed to respirable cotton dust."

## II

[1] The now-familiar task for the Industrial Commission was stated in *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E. 2d 682, 683 (1982) (citation omitted):

> [I]n order to support a conclusion of disability, the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

The Commission is the sole judge of the credibility of the evidence. Although its legal conclusions are reviewable on appeal, the Commission's findings of fact are conclusive if there is competent evidence to support them. *Id.* This Court's inquiry is limited to two issues: whether the Commission's findings of fact are supported by competent evidence and whether its conclusions of law

are justified by the findings of fact. *Hansel v. Sherman Textiles,* 304 N.C. 44, 283 S.E. 2d 101 (1981).

Cannon Mills contends that the finding of fact that Mr. Preslar is partially disabled as a result of his occupational disease is not supported by competent evidence and that, therefore, the conclusion of law to the same effect cannot stand. We disagree.

### A

As Cannon Mills correctly points out, a finding or conclusion of disability must be based on the inability to earn wages, not on physical infirmity, and the degree of disability is measured by wage-earning power. *Hall v. Thomason Chevrolet, Inc.,* 263 N.C. 569, 139 S.E. 2d 857 (1965); *Hill v. DuBose,* 234 N.C. 446, 67 S.E. 2d 371 (1951). There is ample evidence that Mr. Preslar was unable to earn the "same wages he had earned before his injury in the same employment" at Cannon Mills. Although Mr. Preslar apparently retired in 1980 because of his age, and again in 1981 because of his inability to meet production, both Dr. Kelling and Dr. Burkhart (of Cannon Mills) were of the opinion that Mr. Preslar should not work in a dusty environment. The fact that he was able to do physical work does not necessarily mean that he was able to earn the same wages he could earn before he was restricted to working in dust-free areas. *Hilliard.*

Even though Mr. Preslar retired for other reasons, he was *unable,* based on expert medical testimony, to safely resume his employment in a dusty environment. We would indulge an unrealistic abstraction to rule as a matter of law that an individual with an occupational lung disease still has the capacity to earn wages at a *certain job,* despite evidence that to earn those wages the individual would have to disregard medical advice and seriously risk his or her health, simply because that individual still has the ability physically to perform the required tasks. Expert medical testimony that a person with an occupational lung disease should not continue to work in cotton-dust is sufficient to prove inability to earn wages in a job necessarily entailing exposure to cotton dust. We do not require claimants to continue working until the occupational lung disease advances to a crippling stage causing sufficiently extensive permanent damage to prevent physical movement. In short, we hold that there was evidence that Mr. Preslar's environmental constraint, which clearly was substantial-

ly caused by his occupational disease, caused his inability to work at his old job at Cannon Mills.

## B

[2] There was also competent evidence that Mr. Preslar was unable to earn the same wages at any other employment. In making this determination, characteristics peculiar to the claimant, such as age, education, experience and health, may be considered. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 342 S.E. 2d 798 (1986); *Hilliard; Armstrong v. Cone Mills Corp.*, 71 N.C. App. 782, 785, 323 S.E. 2d 48, 50 (1984). The claimant must show that he or she is unable to find other employment at the same wages. *Hundley v. Fieldcrest Mills*, 58 N.C. App. 184, 292 S.E. 2d 766 (1982); *Priddy v. Cone Mills Corp.*, 58 N.C. App. 720, 294 S.E. 2d 743 (1982).

Mr. Preslar applied for work in dust-free areas at Cannon Mills for about one year. And although Mr. Preslar had worked in the textile industry for forty-seven years, he looked for employment outside the textile industry, where he found a job as a janitor. The discrepancy between his wages as a janitor and his wages as an experienced weave-room worker is explained by competent evidence showing Mr. Preslar's age, education, experience and health. His environmental constraint—the inability to work in a dusty environment—clearly was one reason Mr. Preslar had to search for employment for which he was inexperienced.

Cannon Mills' main argument in this case is that Mr. Preslar failed to prove causation. Cannon Mills suggests that a claimant who physically is able to work and who retires for reasons other than his or her occupational disease cannot recover workers' compensation.[1] The argument is that because Mr. Preslar physically was able to work at his old job and did not retire because of breathing problems, he cannot prove that the occupational disease

---

1. Cannon Mills relies partly on *Mills v. J. P. Stevens & Co., Inc.*, 53 N.C. App. 341, 280 S.E. 2d 802, *disc. rev. denied*, 304 N.C. 196, 285 S.E. 2d 100 (1981). We find *Mills* inapposite to the facts of this case. *Mills* involved a claimant with a pre-existing condition which was aggravated temporarily by cotton dust. The Court upheld the Commission's decision denying benefits. The precedential value of *Mills* has been limited to cases involving claimants "who suffer occupational diseases due to personal sensitivities." *Hilliard v. Apex Cabinet Co.*, 54 N.C. App. 173, 175, 282 S.E. 2d 828, 829, *rev'd on other grounds*, 305 N.C. 593, 290 S.E. 2d 682 (1982).

caused his inability to earn the wages he earned at his old job. In its brief, Cannon Mills asserts the following:

> Significantly, Mr. Preslar never testified that the reason that he could not do that production job was because he was having any reaction to working in the cotton dust, or because his inability to work was restricted in any way by any type of respiratory impairment. To the contrary, Dr. Burkhart's records reveal that Mr. Preslar told him that the reason he quit after four days was because of "technical difficulty running the looms."

Cannon Mills discounts the medical testimony that Mr. Preslar should not work in dusty areas by arguing that there is no evidence that this environmental restriction was the *reason* Mr. Preslar was not rehired for work in a dust-free area:

> From all that appears in the record, it is just as probable that Cannon Mills simply was not hiring any new employees in 1981, due to general economic conditions in an industry which has been plagued by rising unemployment and layoffs of workers.

In *Donnell v. Cone Mills Corp.*, 60 N.C. App. 338, 343, 299 S.E. 2d 436, 439, *disc. rev. denied*, 308 N.C. 190, 302 S.E. 2d 243 (1983) this Court upheld the Commission's disability award and rejected the argument that the effects of the occupational disease must be the reason the claimant left his or her former employment:

> Our decision does not ignore that plaintiff's job with the defendant ended because the plant where he worked was closed. But we do not believe this to be dispositive on the disability issue. The crucial fact is that plaintiff's earning capacity was diminished because he developed the occupational disease of byssinosis during his employment with the defendant.

> The Workers' Compensation statutes in North Carolina should be liberally construed to effect their purpose of compensating injured claimants and recovery should not be denied by a technical or narrow construction. *Stevenson v. Durham*, 281 N.C. 300, 188 S.E. 2d 281 (1972). We believe that this decision and its interpretation of "disability" under G.S.

97-2(9) is in accord with that general rule and does not enlarge the statute beyond its limits.

Although in *Donnell* there was evidence that the claimant was not given a new job with the defendant-employer because of claimant's breathing problems, we do not believe such evidence was necessary. When, as in *Donnell* and in the case at bar, there is both expert testimony that the claimant "should not work in a dusty environment . . . [and] evidence of permanent impairment of [claimant's] pulmonary functions," *id.* at 342, 299 S.E. 2d at 438, we will not require the claimant to prove that the employer's refusal to rehire the defendant was specifically because of the environmental restriction. We may assume that, at a minimum, an employer would not rehire a dust-sensitive former employee "with PFT evidence of reduced ventilatory capacities" to work in a dusty environment. And this restriction, which is clearly caused by the occupational disease, may significantly limit the employability of a long-time textile worker with little education and no other experience or training.

We do not hold that any employee with an occupational disease, who decides to retire or change jobs but cannot find comparable employment, may recover for disability so that the former employer is liable for the wage discrepancy. But we also do not require proof that the retirement or job change was a direct consequence of the occupational disease. *See Donnell.* Evidence that a claimant's environmental restriction (caused by an occupational disease) significantly limits the scope of potential employment in his or her usual vocation, when combined with other factors such as a lack of training in any other vocation, is competent to establish a causal nexus between the occupational disease and the partial or total inability to earn wages in the same or any other employment. *See Peoples.*

In *Donnell*, this Court said:

> Given plaintiff's physical condition, the limits on his ability to work [restricted to dust-free areas] and his lack of training in any job except the textile industry, we hold that there was competent evidence before the Industrial Commission to find that plaintiff was disabled from byssinosis.

60 N.C. App. at 342, 299 S.E. 2d at 438. Although Mr. Preslar did not suffer from a poor outward physical condition as did Mr. Don-

nell, they both were limited specifically in their abilities to work in their usual vocations and had no other training. Outward physical health is only one relevant factor to show the extent of disability. It is not a necessary factor to prove that an occupational disease has caused permanent partial disability; other factors — such as age, education and experience — may demonstrate an inability to earn the same wages. See Armstrong, 71 N.C. App. at 785, 323 S.E. 2d at 50.

There is evidence in the case at bar that Mr. Preslar's earning capacity was diminished at least partly because of his inability to work in an occupation at which he had forty-seven years of experience. Thus, Mr. Preslar's diminished earning capacity is causally linked to his occupational disease. Even assuming Cannon Mills refused to rehire Mr. Preslar because of his advanced age or limited education and experience (only in dusty weave rooms) or because economic conditions were forcing layoffs, this would be no different fron a non-textile employer making the same refusal. Hilliard does not require a claimant to prove that each potential employer denied employment to the claimant specifically because he or she had an occupational disease.

We are mindful of this Court's split decision in Hendrix v. Linn-Corriher Corp., 78 N.C. App. 373, 337 S.E. 2d 106 (1985). Hendrix involved facts similar to those in the case at bar, and this Court reversed an award of permanent partial disability. The basis for the majority opinion in Hendrix was the decision in Lucas v. Burlington Industries, 57 N.C. App. 366, 291 S.E. 2d 360, disc. rev. allowed, 306 N.C. 385, 294 S.E. 2d 209 (1982), remanded by order (9 November 1982) (settled by parties before argument in Supreme Court). As explained more fully in the dissent in Hendrix, the precedential value of Lucas is questionable because it relied on cases that were later limited to their facts and it failed to consider the Supreme Court's decision in Hilliard. Specifically, the Hilliard Court, applying the principle established in Little v. Food Services, 295 N.C. 527, 246 S.E. 2d 743 (1978) (involving a spinal cord injury), recognized that it is the Industrial Commission's role to make the factual determination whether claimant is unable to find work in a pollutant-free environment, even though physically able to work, considering the claimant's age, education and experience. This precedent from Hilliard, not mentioned in Lucas or in Hendrix, was recently reaffirmed by the Supreme

Court in *Peoples*. Therefore, we are bound to base our holding on the principle in *Peoples*, *Hilliard* and *Donnell* that an occupational lung disease claimant may be disabled even though physically able to work.

### III

[3] Cannon Mills correctly asserts that actual wages earned does not necessarily prove wage-earning capacity. As this Court said in *Donnell*, 60 N.C. App. at 342, 299 S.E. 2d at 438:

> Although comparing before and after earnings is not the method to show diminished earning capacity, *Hill v. DuBose*, 234 N.C. 446, 447-48, 67 S.E. 2d 371, 372 (1951), we believe that it is a factor to be considered.

In any event, the Commission used actual wages as only one factor. Mr. Preslar was earning $3.35 per hour, and the Commission found that he worked twenty-five hours per week. This amounts to a weekly wage of $83.75. But the Commission found, and the evidence shows, that Mr. Preslar was capable of working a full forty-hour week. On this basis, the Commission concluded that $134.00 was the average weekly wage Mr. Preslar was capable of earning after working for Cannon Mills. These findings and conclusions are supported by the record. We decline Cannon Mills' invitation to draw contrary inferences and conclusions from the evidence.

For the reasons set forth above, the Commission's opinion and award is

Affirmed.

Judges WEBB and COZORT concur.