Thomas v. Hanes Printables

ANDREA D. THOMAS, EMPLOYEE, PLAINTIFF v. HANES PRINTABLES, EMPLOYER, AND AETNA CASUALTY & SURETY COMPANY, CARRIER, DEFENDANTS

No. 8710IC1167

(Filed 2 August 1988)

Master and Servant §§ 68, 94.1— occupational disease—tendonitis—inability to earn same wages after injury—findings not supported by evidence

Where plaintiff contracted the occupational disease tendonitis while performing her duties as an inspect-fold operator and was given an intracompany transfer to a position where she made over $100 less per week, she met the *Hilliard* test of disability, and the Industrial Commission erred in concluding that her inability to earn the same wages in other jobs was due merely to her lack of skill in the new job rather than to her occupational disease.

APPEAL by plaintiff from an Opinion and Award of the Full Commission entered by Commissioner William H. Stephenson and filed on 4 August 1987. Heard in the Court of Appeals 7 April 1988.

*Morgan & Morton, by J. Griffin Morgan, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by Reid C. Adams, Jr., for defendant-appellees.*

JOHNSON, Judge.

Plaintiff filed this claim with the Industrial Commission to recover workers' compensation benefits for a loss of income sustained due to an intracompany transfer necessitated by a compensable injury. Ms. Thomas transferred because her former duties in her inspect-fold job caused her to contract the occupational disease, tendonitis.

Andrea Thomas began her employment with Hanes Printables in October 1980, and has been continuously employed there, with the exception of a brief layoff, since February 1981. In late 1984 or early 1985, plaintiff contracted tendonitis of the right shoulder, and was diagnosed as having the disease on 19 March 1985. Plaintiff was totally disabled for two and 6/7 weeks and was granted workers' compensation benefits pursuant to G.S. 97-29 for that period, which included twenty days occurring between 20

March 1985 and 7 December 1985. She was partially disabled from 29 August 1985 through 1 July 1986 and was compensated for that period of disability as well.

Plaintiff and defendant-employer were unable to agree upon whether she was entitled to benefits after 1 July 1986 pursuant to G.S. 97-30. She then requested a hearing to have that issue decided, and on 29 July 1986 the matter was heard before Deputy Commissioner Morgan S. Chapman. On 21 November 1986, the Commission's decision was filed, which concluded that plaintiff was not partially disabled after 1 July 1986 and was not therefore entitled to benefits pursuant to G.S. 97-30.

On appeal to the Full Commission, the Opinion of the Deputy Commissioner, in which benefits were denied, was affirmed. From this Opinion and Award plaintiff appeals.

Plaintiff presents four questions for review by this Court, but concedes that the ultimate issue to be decided on appeal is whether she continued to be partially disabled as defined by G.S. 97-2(9) after 1 July 1986. We think that the present case law and statutes support a conclusion that plaintiff continued to be partially disabled after 1 July 1986, and therefore reverse the Opinion and Award of the Industrial Commission.

The standard of review we must employ when considering an appeal taken from an Opinion and Award of the Industrial Commission is to affirm its findings when there is competent evidence to support them, although evidence supportive of a contrary result may exist. *Walston v. Burlington Industries,* 304 N.C. 670, 285 S.E. 2d 822 (1982). The Commission's legal conclusions, however, are reviewable by the appellate courts. *Jackson v. Highway Commission,* 272 N.C. 697, 158 S.E. 2d 865 (1968).

## THE HILLIARD TEST

G.S. 97-2(9) defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." The three-prong test employed in order to determine whether plaintiff is disabled due to a reduction in earning capacity has become known as the *Hilliard Test.* According to *Hilliard v. Apex Cabinet Co.,* 305 N.C.

593, 595, 290 S.E. 2d 682, 683 (1982), the Commission must find, in order to support a conclusion of disability:

(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment,

(2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and

(3) that this individual's incapacity to earn was caused by plaintiff's injury.

I

The parties have stipulated that plaintiff has satisfied the first requirement of the test. Stipulation number thirteen states that: "[a]s a result of plaintiff's occupational disease, tendonitis, she is incapable of returning to work as an Inspect-Fold Operator and earning the same wages she previously earned in that occupation."

II

Plaintiff's post-injury employment in fact, as well as her employment potential, shall become our focus as our attention shifts to the second requirement. The evidence discloses that plaintiff is a thirty-one year old female with an eighth grade education and limited reading ability. She has no work experience, training, or skill which qualify her for any employment other than the textile industry or other low-skilled manual labor oriented occupations.

Before plaintiff's transfer, she earned an average weekly wage of $331.27, and after the job transfer, she was only able to earn an average weekly wage of $229.14; a difference of over $100.00 per week. Her wages did not improve as a result of reaching maximum medical improvement, and despite her best efforts, she has not been able to earn the wage in her new position that she was earning before she contracted the occupational disease.

Plaintiff also attempted to supplement her income by looking outside her permanent employment for work. She found a part-time job as a dishwasher on weekends earning $3.85 per hour, but

was unable to sustain that employment because of the strain it created. Although the practice of comparing earnings before and after an injury is not the proper method to exhibit diminished earning capacity, *Hill v. Dubose*, 234 N.C. 446, 67 S.E. 2d 371, this Court has indicated that this is a valid factor which deserves consideration. *Donnell v. Cone Mills Corp.*, 60 N.C. App. 338, 299 S.E. 2d 436, *disc. rev. denied*, 308 N.C. 190, 302 S.E. 2d 243 (1983).

In determining the extent to which an occupational disease affects an employee's wage-earning ability in another position, the line of inquiry must center on that particular individual's earning capacity and not that of a different individual. *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 345 S.E. 2d 374 (1986). The Court also states that:

> If preexisting conditions such as the employee's age, education and work experience are such that an injury causes the employee a greater degree of incapacity for work than the same injury would cause some other person, the employee must be compensated for the actual incapacity he or she suffers, and not for the degree of disability which would be suffered by someone younger or who possesses superior education or work experience.

*Hendrix* at 188, 345 S.E. 2d at 380, *quoting, Peoples v. Cone Mills Corp.*, 316 N.C. 426, 441, 342 S.E. 2d 798, 808 (1986).

In denying benefits to plaintiff, the Commission placed special emphasis upon their prediction that plaintiff may have the future capability of earning the same wage that she was earning prior to her injury. This prediction was based at least in part upon evidence to which the parties stipulated that "[o]n July 29, 1985 at least one Hanes employee working as a Stitch-Display Sewing Machine Operator [the position to which plaintiff was transferred] had an average weekly wage greater than the plaintiff's average weekly wage as an Inspect-Fold operator [plaintiff's former position]."

By reviewing the evidence in this manner, the Commission (1) acknowledges the undisputed fact that plaintiff is paid according to her rate of production, (2) acknowledges as well, the fact that her rate of production has substantially diminished because of the transfer, which was necessitated by the compensable injury she

sustained in the former position, and (3) indirectly concedes that plaintiff is incapable of earning the same wages after her injury in any other employment due to the fact that her present earning capacity has been substantially diminished.

In finding of fact number five, the Commission states:

If she were to work at a faster rate, she could earn the same or greater wages as she was earning at the time she contracted this occupational disease. *However, she does not yet have the skill to accomplish that goal.* Her inability to earn the same wages in this other job is not due to her occupational disease but rather to her lack of skill in the job.

(Emphasis added.)

We hold that this finding of fact is not supported by the evidence, as the analysis contained therein was prematurely concluded. While it is correct that plaintiff's inability to earn the same wages as in her former employment is not due to a physical incapacity per se, the transfer of positions which resulted in a diminished earning capacity was necessitated by a compensable injury. Therefore, plaintiff's inability to earn the same wages in other jobs is due to her occupational disease and not merely to her "lack of skill in the job" as the Commission found. Additionally, the Commission's conclusion of law that plaintiff is not entitled to benefits for partial disability after 1 July 1986, because she is capable of earning the same wages she earned before contracting the occupational disease, is not supported by the findings of fact.

### III

The third requirement of the *Hilliard Test*, that this individual's incapacity to earn was caused by her injury, has been considered and answered in subsection II. As previously stated, plaintiff sustained a transfer because she contracted an occupational disease while performing her duties as an inspect-fold operator. After the transfer, which was necessitated by a compensable injury, she suffered a diminished earning capacity. It logically follows, therefore, that her incapacity to earn was *caused* by her injury.

## SEBASTIAN V. WATKINS

In reversing this Award, we are mindful of the Commission's reliance upon *Sebastian v. Watkins Hair Styling*, 40 N.C. App. 30, 251 S.E. 2d 872 (1979). We find the facts of the case *sub judice* and those in *Sebastian* distinguishable. The plaintiff in *Sebastian* was unable to continue her employment as a hairdresser because of a personal sensitivity to chemicals used in her work. This Court held that there was no evidence that subsequent to 31 January 1977, when her skin condition completely cleared up, plaintiff's inability to earn wages was the result of an occupational disease. The Court was unconvinced that plaintiff's "personal sensitivity" met the definition of an occupational disease pursuant to G.S. 97-53(13) either before or after 31 January 1977, when the effects of the exposure to the chemicals had dissipated.

The case *sub judice*, however, involves an undisputed occupational disease by definition; "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment . . ." rather than a personal sensitivity which is peculiar to a particular individual. *Id.* The plaintiff suffered disablement, which is equivalent to disability as defined in G.S. 97-2(9); i.e., incapacity because of injury to earn the wages she was earning prior to the injury in the same or any other employment, because of a job transfer compelled by a compensable injury.

We find the circumstances in the present case more similar to those in *Heffner v. Cone Mills Corp.*, 83 N.C. App. 84, 349 S.E. 2d 70 (1986) than to those in *Sebastian*. In *Heffner*, the plaintiff retired after having learned that the plant where he was employed would soon close, filed a claim a few months later seeking benefits for an occupational lung disease, and was denied benefits because he suffered no incapacity for work resulting from his occupational disease, but rather because of his desire to retire which was motivated by the plant closing. The Court stated that:

> Because disability measures an employee's present ability to earn wages, *Webb v. Pauline Knitting Industries*, 78 N.C. App. 184, 336 S.E. 2d 645 (1985), and is unrelated to a decision to withdraw from the labor force by retirement, the Commission may not deny disability benefits because the

claimant retired where there is evidence of a diminished earning capacity caused by an occupational disease. *So long as the disease has, in some way, diminished the employee's ability to earn wages, he may recover disability compensation.* See *Preslar v. Cannon Mills Co.*, 80 N.C. App. 610, 343 S.E. 2d 209 (1986) and *Donnell v. Cone Mills Corp.*, 60 N.C. App. 338, 299 S.E. 2d 436 (1983).

*Id.* at 88, 349 S.E. 2d at 74 (emphasis added).

The Commission is met with the task of considering and resolving the disability question based upon an individual's particular circumstances and characteristics. Just as the plaintiff's disability was required to be considered in light of the plant's closing in *Heffner*, our plaintiff's disability must be considered in light of her particular characteristics in addition to the fact that her transfer adversely affected her ability to earn wages.

Therefore, we remand this case for a determination of compensation for disability not inconsistent with this opinion.

Reversed and remanded.

Judges BECTON and GREENE concur.