Over a period of roughly six years working in the employer's facility, plaintiff developed a sensitivity to chemicals present there. Away from the plant, he recovered from all physical symptoms and was as physically capable of work as before — but not able to find another job at comparable wages. Defendants argue that plaintiff's "personal sensitivity" does not entitle him to compensation for diminution of his wage earning capacity under N.C. Gen. Stat. § 97-30, citing Sebastian v. MonaWatkins Hair Styling, 40 N.C. App. 30, 251 S.E.2d 872, cert. denied, 297 N.C. 301, 254 S.E.2d 921 (1979). The Court of Appeals' decision in Thomas v. Hanes Printables, 91 N.C. App. 45, 370 S.E.2d 419 (1988) controls on this issue:
 We find the facts of the case sub judice and those in Sebastian distinguishable. The plaintiff in Sebastian was unable to continue her employment as a hairdresser because of a personal sensitivity to chemicals used in her work. This Court held that there was no evidence that subsequent to 31 January 1977, when her skin condition completely cleared up, plaintiff's inability to earn wages was the result of an occupational disease. The Court was unconvinced that plaintiff's "personal sensitivity" met the definition of an occupational disease pursuant to G.S. 97-53(13) either before or after 31 January 1977, when the effects of the exposure to the chemicals had dissipated. The case sub judice, however, involves an undisputed occupational disease by definition; "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment . . ." rather than a personal sensitivity which is peculiar to a particular individual.
 While it is correct that plaintiff's inability to earn the same wages as in her former employment is not due to a physical incapacity per se, the transfer of positions which resulted in a diminished earning capacity was necessitated by a compensable injury. Therefore, plaintiff's inability to earn the same wages in other jobs is due to her occupational disease and not merely to her "lack of skill in the job. . . ."
Thomas, at 49-50.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives, with minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the Pre-Trial Agreement, filed on January 31, 1995, and at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act, and the employment relationship existed between the parties on August 18, 1992.
2. The defendant was a duly qualified self-insured.
3. The plaintiff has not returned to work for the defendant since July 15, 1992, except for three trial return-to-work instances, for a total of six days.
4. Adeline Wall and Doris Hunter are duly licensed nurses in the State of North Carolina.
5. The plaintiff was paid sickness and accident benefits from July 16, 1992, through July 31, 1993, in an amount of $13,193.94, for which the defendants are entitled to a credit if this matter is found to be compensable.
6. The issues for determination are:
 a. Whether the plaintiff has sustained a compensable injury or occupational disease;
 b. If the plaintiff has a compensable injury or condition, whether he is entitled to temporary total and partial disability compensation; and
 c. Whether the plaintiff is entitled to vocational rehabilitation.
* * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a thirty-four year old high school graduate who began working with defendant on May 7, 1984.
2. For his first six years with defendant, the plaintiff worked as a tire builder where he worked with green material to form tires in molds. The plaintiff wore shoes issued by defendant which were heavier; however, he eventually began wearing Rockport shoes to work.
3. The plaintiff worked for a number of months as a bead winder, but was then returned to the tire builder for a few months.
4. The plaintiff then worked as a material handler, which required him to go into the processing part of the plant to remove scrap. He also brought sidewalls and inner liners for the tire winders.
5. Approximately one year prior to July of 1992, the plaintiff complained of burning, aching sensations, fatigue, and rash on his legs. Initially, the symptoms would get gradually worse over the week, would be worse with more hours worked, and would go away over the weekend when plaintiff did not work.
6. The plaintiff first sought medical treatment for his legs in April or May of 1992 at Walker Medical Clinic. The doctor gave the plaintiff a salve and drew blood.
7. In July of 1992, the plaintiff was seen by Dr. Brewer, who took a biopsy of the leg.
8. From July 16, 1992 until October 20, 1992, the plaintiff was out of work, and his leg symptoms cleared up. However, plaintiff returned to work for two or three days on the material handler job, at which time the burning and rash returned. He was referred to Nurse Wall at Arrowood Medical Center.
9. On February 16, 1993, the plaintiff attempted to return to the material handler job for a second time, at which time the rash recurred.
10. Prior to the bead job, the plaintiff did not experience any rashes or leg symptoms.
11. In late February of 1993, the plaintiff began working as a carpet installer, and he became self-employed as a carpet installer in February of 1994.
12. The plaintiff sought other employment with similar wages as the job with defendants. However, he was unable to get such a job, and his transferable skills make him unlikely to qualify for comparable wages with other employers.
13. The plaintiff was treated by Dr. Dennis Darcey, an expert in occupational medicine, who has opined that plaintiff's allergic vasculitis was a condition to which the general population was not exposed but was peculiar to the rubber industry. As a result of his employment, plaintiff was placed at a greater risk of contracting the disease by conditions characteristic of and peculiar to his occupation than the general public or workers in the general run of occupations.
14. With respect to the causation of the allergic vasculitis, Dr. Darcey has opined that based upon plaintiff's historical account of the condition, it is suggestive of something in the work environment causing the condition. Dr. Darcey did not recommend further skin testing in order to determine the exact allergen which caused the allergic condition to plaintiff's legs.
15. Plaintiff's average weekly wage was $650.00 in July of 1992, which entitles plaintiff to the maximum compensation rate of $426.00.
16. In 1994, the plaintiff earned gross income from his carpet installation business of $26,081.00; however, he had operating expenses of $15,416.00, which netted an income of $10,665.00. Said income fairly reflected plaintiff's wage earning capacity after being forced by his occupational disease to leave his former employment with the defendant. On and after March 1, 1994, the greater weight of the evidence of record shows plaintiff's average weekly wage was $244.05, rendering a compensation rate pursuant to N.C. Gen. Stat. § 97-30 of $270.63 per week.
17. Plaintiff contracted an occupational disease, allergic vasculitis, as a result of his employment with the defendant employer.
* * * * * * * *
Based upon the foregoing stipulations and findings of fact the Full Commission makes the following
CONCLUSIONS OF LAW
1. The plaintiff has sustained an occupational disease within the meaning of N.C. Gen. Stat. § 97-53 (13) as a result of his employment with the defendant. Keel v. H V, Inc. d/b/a AceOne-Hour Cleaning, 107 N.C. App. 536, 540, 421 S.E.2d 362
(1992).
2. As a result of the occupational disease, the plaintiff is entitled to temporary total disability compensation at the rate of $426.00 for the period from July 15, 1992 through February 28, 1994, when he began working as a carpet installer. N.C. Gen. Stat. §§ 97-29; 97-2(5).
3. The plaintiff is entitled to temporary partial disability benefits at the rate of $270.63 per week for the period beginning February 28, 1994, continuing through the date of the hearing and during his temporary partial disability or until a change in his wage earning capacity, but not to exceed 300 weeks from the date of the injury. N.C. Gen. Stat. § 97-30.
4. The defendants are entitled to a credit against compensation due equal to the sickness and accident benefits paid to plaintiff, and gross wages paid for work during plaintiff's failed attempts to return to work for the employer. Defendants shall receive dollar-for-dollar credit for these wages, as they were paid prior to July 5, 1994, the effective date of the 1994 amendment to N.C. Gen. Stat. § 97-42. N.C. Gen. Stat. § 97-29. Evans v. ATT Technologies, 332 N.C. 78, 88,418 S.E.2d 503 (1992).
5. The plaintiff is entitled to payment by defendants of all medical compensation expenses incurred as a result of the occupational disease, when the bills for same have been submitted to the carrier and approved in accordance with the rules of the Commission. N.C. Gen. Stat. §§ 97-59; 97-2(19).
* * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to an attorney's fee herein approved, defendants shall pay temporary total disability compensation at the rate of $426.00 per week from July 15, 1992 through February 28, 1994, less a credit for sickness and accident benefits and gross wages paid during this period. This compensation has accrued and shall be paid in a lump sum.
2. Subject to an attorney's fee herein approved, defendants shall pay temporary partial disability compensation at the rate of $270.63. This compensation shall be payable for up to 300 weeks less the number of weeks paid for temporary total disability. As much of said compensation as has accrued shall be paid in a lump sum.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in paragraphs 1 and 2 is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel. With respect to future benefits, every fourth check shall be paid directly to counsel.
4. Defendants shall pay medical expenses incurred by plaintiff as a result of this occupational disease.
5. Defendants shall pay the costs due this Commission.
 S/ ______________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________ COY M. VANCE COMMISSIONER
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
JRW/jb/md 4/11/97