***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and as part of the Pretrial Agreement as:
 STIPULATIONS *Page 2 
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between defendant-employer and plaintiff.
3. The carrier liable on the risk is Brentwood Services Administrators.
4. Plaintiff's average weekly wage is $756.48, which yields a compensation rate of $540.35.
5. Plaintiff sustained an injury to his left shoulder while at work on March 20, 2008. Defendants deny that the injury is compensable.
6. The following exhibits were stipulated into evidence:
 a. Stipulated Exhibit 1, Pretrial Agreement.
 b. Stipulated Exhibit 2, including the Industrial Commission forms filed in this matter, plaintiff's medical records, and plaintiff's job search records, collectively paginated 1-84.
 c. Exhibit 1, ratchet wrench that was bent during incident in question.
7. The issues before the Full Commission are whether plaintiff sustained a compensable workplace injury to his left shoulder on or about March 20, 2008 and, if so, to what benefits is plaintiff entitled to recover under the North Carolina Workers' Compensation Act.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 60 years old at the time of the hearing before the Deputy Commissioner. Plaintiff graduated from high school and has no additional education, other than job-related training. Plaintiff began working for defendant-employer in 2007. Plaintiff's *Page 3 
vocational history prior to working for defendant-employer includes over 40 years of motor vehicle body repair work.
2. Plaintiff was employed as a body shop technician for defendant-employer. Plaintiff's job duties for defendant-employer included heavy lifting, overhead work, and twisting.
3. On March 20, 2008 plaintiff was removing and replacing a vehicle bumper. The bolts on this particular bumper were rusted extensively and therefore were extraordinarily difficult to loosen and remove, seemingly because the vehicle had been submerged in water. Plaintiff was unable to use air tools to loosen the bolts on this particular vehicle due to space limitations, which was out of the ordinary. The contorted positions plaintiff assumed to attempt to remove this bumper and the force required were not usual in his employment. One particular bolt, near the tailpipe was apparently fused to the bumper. Plaintiff had never experienced a bolt of this level of difficulty to remove.
4. A "jack piper" tool was also used in the attempt to remove the fused bolt on March 20, 2008. This was the only time plaintiff had ever used a "jack piper." A "jack piper" is a pipe approximately three feet long that fits over the ratchet wrench in order to provide the worker additional leverage to loosen stuck bolts. Plaintiff continued his attempt to remove this bolt for approximately 30 minutes, but was unsuccessful. The ratchet wrench used was bent during this process. Plaintiff had never before bent a wrench. This bolt was fused to the bumper to the extent that it had to be chiseled off.
5. Following plaintiff's attempts to remove this bumper, plaintiff experienced shoulder pain, as well as pain up his neck and down his left arm. Plaintiff reported the incident to his supervisor, David Mabe. Plaintiff initially continued working his regular job, but had increasing pain and weakness in his left shoulder and was consequently put on light duty. *Page 4 
6. On April 8, 2008, plaintiff first sought medical care for his left shoulder condition at the emergency department of Northern Hospital of Surry County. Plaintiff complained of a left shoulder injury. Plaintiff was diagnosed with a strain at that time, given a note for light duty work for one week and was referred to Northwestern Medical Partners.
7. On April 18, 2008, plaintiff was seen at Northwestern Medical Partners. The medical record indicates plaintiff reported "left shoulder pain and decreased ROM since an injury sustained at work about one month ago." Plaintiff was given pain medicine and was referred to Dr. Robert Williamson at Blue Ridge Orthopaedics.
8. On April 25, 2008, plaintiff was seen by Dr. Williamson. The medical record states that "[plaintiff] was sent to me for evaluation and treatment of left shoulder pain, which has been ongoing for approximately one month. He was using a pry bar at work and sustained injury to his left shoulder." The note continues: "An MRI was obtained which demonstrated a full thickness rotator cuff tear and he was referred for orthopaedic evaluation and treatment." Dr. Williamson diagnosed plaintiff with a left shoulder full thickness rotator cuff tear and an AC separation and indicated the injury is work-related. He further indicated that the incident aggravated plaintiff's asymptomatic preexisting arthritis.
9. Defendants denied plaintiff's claim using a Form 61, dated May 14, 2008.
10. Surgery on plaintiff's shoulder was scheduled for May 13, 2008, and plaintiff continued to work until May 9, 2008. The surgery was delayed until May 16, 2008. Due to defendants' denial, plaintiff paid for the surgery using his private health insurance and his own money.
11. On May 16, 2008, plaintiff underwent a left shoulder arthroscopy and debridement procedure performed by Dr. Williamson. This procedure also included an arthroscopic *Page 5 
subacromial decompression/acromioplasty, an arthroscopic distal clavicle resection, and a mini-open rotator cuff repair.
12. Plaintiff returned to his regular pre-injury job for three days in late July 2008, but was unable to continue due to left shoulder pain. During plaintiff's visit to Dr. Williamson on July 30, 2008, he indicated that plaintiff "returned to work but was unable to tolerate the heavy lifting a[nd] twisting. Plaintiff had a re-injury lifting a heavy piece of equipment which significantly increased his pain and decreased range of motion." The July 30, 2008 medical record also indicated plaintiff was taken back out of work at that time.
13. On September 18, 2008, Dr. Williamson released plaintiff to return to work without restrictions. Subsequent to this release, plaintiff was told by defendant-employer that plaintiff did not have a position with defendant-employer any longer. Plaintiff continued the physical therapy exercises at home, as he had been instructed, and found that he was unable to build up the repetitions and became weaker. He was unable to return to the doctor because of financial reasons until October 13, 2008.
14. On October 13, 2008, Dr. Williamson found plaintiff to be at maximum medical improvement and assigned a permanent functional impairment of 20% to the left arm. Plaintiff was again given work restrictions, which included no overhead work, no heavy lifting over 45 pounds, no heavy torquing or twisting, and no repetitive heavy impact activities.
15. Plaintiff took the doctor's note to defendant-employer, but there was no work available within his restrictions. Since October 13, 2008, plaintiff has inquired about employment at numerous businesses in the auto-body repair and other industries, but has been unable to secure suitable employment due to the physical restrictions as the result of the March 20, 2008 injury. *Page 6 
16. Dr. Williamson stated, and the Full Commission finds, that the March 20, 2008 incident more likely than not caused plaintiff's left shoulder rotator cuff tear and AC separation.
17. Plaintiff's work duties and the conditions experienced on March 20, 2008 constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. Specifically, as plaintiff attempted to remove an extraordinarily stuck bolt using a highly unusual amount of force and using highly unusual methods in contorted positions, plaintiff injured his left shoulder.
18. On or about March 20, 2008 plaintiff sustained a compensable injury by accident to his left shoulder arising out of and in the course of his employment with defendant-employer.
19. Plaintiff has made significant, reasonable efforts to obtain suitable employment subsequent to October 13, 2008. These efforts have been unsuccessful.
20. The credible medical and vocational evidence of record shows that, as a result of his March 20, 2008 injury, taking into account both his physical and vocational limitations, plaintiff has been totally disabled and unable to earn any wages in any employment from May 10, 2008 and continuing, except for three days in July, 2008.
21. Because of the circumstances surrounding plaintiff's return to work with restrictions, his subsequent constructive termination, and his ongoing restrictions, it has not been established whether plaintiff's termination was for a reason unrelated to his admittedly compensable injury, for which a non-injured employee would have been terminated.
22. According to the Forms 22 stipulated into evidence, plaintiff's average weekly wage was $756.48, which yields a weekly workers' compensation rate of $504.35.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. It is settled law in North Carolina that the "injury by accident" requirement of N.C. Gen. Stat. § 97-2(6) can be satisfied when a plaintiff is injured due to an extra or unusual degree of exertion, in that this can constitute an unforeseen or unusual event or condition. Calderwood v. Charlotte-Mecklenburg Hosp.Auth., 135 N.C. App. 112, 519 S.E.2d 61 (1999), disc. reviewdenied, 351 N.C. 351, 543 S.E.2d 124 (2000); Jackson v.Fayetteville Area Sys. of Transpt.,88 N.C. App. 123, 362 S.E.2d 569 (1987).
2. Furthermore, our courts have held that an injury is compensable if it is caused by an accident that arises out of employment, materially accelerates or aggravates a pre-existing condition, and proximately contributes to disability. N.C. Gen. Stat. § 97-2(6); Brown v. Family Dollar Distrib.Ctr., 129 N.C. App. 361, 364, 499 S.E.2d 197, 199 (1998).
3. On March 20, 2008, plaintiff attempted to remove an unusually difficult bolt using a highly irregular amount of force and out of the ordinary methods in contorted positions, which resulted in an injury to his left shoulder. Plaintiff's work duties and the conditions experienced on this date during the attempted removal of a bolt constituted an interruption of plaintiff's normal work routine and the introduction thereby of conditions likely to result in unexpected consequences. N.C. Gen. Stat. § 97-2(6); Harding v. Thomas Howard Co.,256 N.C. 427, 124 S.E.2d 109 (1962). Plaintiff's unusual work duties and consequent extra and unusual amount of exertion of March 20, 2008 thereby resulted in plaintiff's injury. N.C. Gen. Stat. § 97-2(6); Calderwood v. Charlotte-MecklenburgHosp. Auth., supra; Jackson v. Fayetteville Area Sys. ofTranspt., supra. This compensable injury by accident caused plaintiff's left shoulder condition or *Page 8 
materially accelerated or aggravated a pre-existing non-disabling condition. N.C. Gen. Stat. § 97-2(6); Brown v. Family DollarDistrib. Ctr., supra.
4. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
5. In the present case plaintiff met his initial burden to show that he is disabled. Plaintiff was capable of some work but, after a reasonable effort on his part, has been unsuccessful in his efforts to obtain suitable employment. Russell v. Lowe's ProductDistribution, supra. *Page 9 
6. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical and vocational limitations.Demery v. Perdue Farms., Inc., supra.
7. As the result of the work-related injury by accident to plaintiff's left shoulder on March 20, 2008, plaintiff was totally disabled and is therefore entitled to payment by defendants of ongoing total disability compensation at the rate of $504.35 per week for the period from May 10, 2008 and continuing until plaintiff returns to work or further Order of the Commission, excluding July 24, 25 and 28, 2008 when plaintiff attempted to return to work. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
8. Plaintiff's termination was for reasons related to his compensable workplace injury, for which a non-injured employee would not have been terminated. Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
9. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment incurred or to be incurred as a result of the compensable injury for so long as such examinations, evaluations, and treatments effect a cure, give relief, or lessen the period of disability, which are necessitated by the March 20, 2008 injury by accident. N.C. Gen. Stat. § 97-25.
10. According to the Forms 22 stipulated into evidence, plaintiff's average weekly wage was $756.48, which yields a weekly workers' compensation rate of $504.35. N.C. Gen. Stat. §§ 97-2(5); 97-29.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following: *Page 10 
 AWARD
1. Subject to a reasonable attorney's fee approved below, defendants shall pay plaintiff total disability compensation at a rate of $504.35 per week for the period beginning May 10, 2008, excluding the three days of July 24, 25 and 28, 2008, and continuing until plaintiff returns to work or further Order of the Commission. Compensation which has accrued shall be paid in a lump sum.
2. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, defendants shall pay all medical expenses incurred or to be incurred as a result of the compensable shoulder injury sustained by plaintiff on March 20, 2008 when bills for the same have been approved pursuant to Industrial Commission procedures.
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: 25% percent of any lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. Thereafter, plaintiff's attorney shall receive every fourth compensation check due plaintiff.
4. Defendants shall pay the costs due the Commission.
This 26th day of July, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER S. SCOTT COMMISSIONER *Page 1