***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission enters the following Opinion and Award.
 *********** ISSUES
1. Whether Defendants improperly terminated Plaintiff's TTD compensation?
2. Whether Plaintiff is entitled to have temporary total disability compensation reinstated and, if so, from what date? *Page 2 
3. Whether Plaintiff constructively refused suitable employment and, if so, whether he is barred from receiving further temporary total disability compensation?
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of injury in this claim is June 22, 2008.
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On such date, the employer-employee relationship existed between Defendant-Employer and Plaintiff.
4. On such date, Defendant-Employer employed three or more employees.
5. Defendant-Employer is insured by Key Risk Insurance Company.
6. Plaintiff's average weekly wage is $802.94.
7. Defendants accepted Plaintiff's claim.
8. Defendants have paid temporary total disability compensation to Plaintiff from June 23, 2008 to August 4, 2008.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Plaintiff's medical records *Page 3 
 • Exhibit 4: Defendants' discovery responses
 • Exhibit 5: Plaintiff's personnel file
 • Exhibit 6: Vocational rehabilitation reports
A transcript of the deposition of the following was also received following the hearing before Deputy Commissioner Harris:
 • John P. McGregor (with Exhibits 1-3)
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 41 years old, with a date of birth of November 24, 1968. He graduated from high school and entered the military, where he received training in electronics and computers. Before working with Defendant-Employer, Plaintiff had worked as a certified alarm system installer and as a correctional officer with the North Carolina Department of Correction.
2. In 2002, Plaintiff started working with Defendant-Employer as an animal control officer. Then, for a period of time, Plaintiff was an animal cruelty investigator. In June 2006, Plaintiff became the animal control supervisor.
3. As animal control supervisor, Plaintiff performed field duties in addition to his supervisory duties. He responded to calls and had to deal with rabid and aggressive animals weighing up to 200 pounds. The job required agility and the ability to handle physically heavy duty.
4. On June 22, 2008, Plaintiff sustained a compensable back injury while responding to a call. While he was in the process of caging two dogs on the back of his truck, the first dog *Page 4 
tried to jump out as he was putting the second dog in the cage. In trying to restrain the first dog, Plaintiff twisted and felt a pop in his back, with immediate sharp pain down his left leg into his left foot.
5. Defendants accepted a "lumbar strain" on a Form 60 dated June 30, 2008 and began paying weekly temporary total disability compensation at the rate of $535.32 per week and providing medical treatment.
6. A lumbar spine MRI on July 3, 2008 showed a herniation at L5-S1 contacting the left S1 nerve root.
7. On August 4, 2008, Plaintiff saw Dr. Richard Osenbach, a neurosurgeon. Dr. Osenbach assigned restrictions allowing Plaintiff to return to administrative work only, with allowance for position changes as needed.
8. Plaintiff returned to work the next morning and did paperwork in his office all day. He did the same thing the following day.
9. Defendant-Employer notified Defendant-Carrier of Plaintiff's return to work, and Defendant-Carrier filed a Form 28T dated August 6, 2008 to terminate Plaintiff's disability compensation effective August 4, 2008.
10. On August 6, 2008, Plaintiff's supervisor, Larry Philpott, called Plaintiff at home and requested that Plaintiff report to the human resources department the next morning.
11. When Plaintiff went in on August 7, 2008, Mr. Philpott gave him written notice of a pre-dismissal conference and placed him on administrative leave with pay.
12. Plaintiff attended the pre-dismissal conference on August 12, 2008. Mr. Philpott later formally terminated Plaintiff effective August 27, 2008. Plaintiff has not received any income or disability compensation since August 27, 2008. *Page 5 
13. Mr. Philpott terminated Plaintiff for "gross inefficiency and inexcusable neglect." Mr. Philpott based the decision to terminate Plaintiff on Plaintiff's lack of organization and failure to follow up on citizens' calls. Mr. Philpott also based his decision on an event that occurred on Sunday, June 22, 2008, prior to Plaintiff's injury. One of Plaintiff's subordinates, who was under work restrictions at the time, re-injured his shoulder while responding to a call. Plaintiff had assigned this subordinate to be on-call over the weekend despite knowing that he was under work restrictions.
14. Following his termination from Defendant-Employer, Plaintiff continued to receive medical treatment provided by Defendants.
15. On September 8, 2008, Dr. Osenbach continued Plaintiff's sedentary work restrictions and discussed surgery with him.
16. On December 11, 2008, Plaintiff presented to Dr. Scott Sanitate for an independent medical examination. Dr. Sanitate assigned work restrictions of no lifting greater than 20 pounds, avoidance of repetitive lumbar flexion and extension, and allowance for position changes as needed. He also recommended physical therapy.
17. Plaintiff did a one-month course of physical therapy, which provided him with little relief.
18. Plaintiff again saw Dr. Sanitate on April 27, 2009. Dr. Sanitate declared that Plaintiff had reached maximum medical improvement and assigned a five percent permanent partial impairment rating to Plaintiff's back. He also left in place the work restrictions that he had assigned on December 11, 2008. Dr. Sanitate told Plaintiff that he had little else to offer Plaintiff but that if his pain continued, he might want to seek a second surgical opinion. *Page 6 
19. Defendants have provided Plaintiff with vocational rehabilitation, starting in July 2009. Plaintiff completed a computer skills course, as recommended by the rehabilitation professional, Mr. McGregor. Plaintiff did not miss a day of the class and scored 100 on the final exam. Plaintiff has cooperated fully with Mr. McGregor in all respects and has applied, both in conjunction with Mr. McGregor and on his own, for several positions. Plaintiff has applied for positions as a police dispatcher and records clerk, in alarm equipment sales, and in electronics sales. As of the hearing before the Deputy Commissioner, Plaintiff had not received any job offers.
20. Plaintiff cannot return to his former job in animal control, based on Dr. Sanitate's restrictions. As of Mr. McGregor's deposition on December 2, 2009, he and Plaintiff were focusing on a vacancy for a 911 dispatcher position with Harnett County, but their efforts to that point had not yielded a job offer.
21. While Plaintiff apparently had enough paperwork to do to keep him occupied for the two days he worked in August 2008, there is not a sufficient showing on the record as to how long this paperwork-only light duty assignment could have lasted, nor is there any evidence of any other light duty assignments that would have been available to Plaintiff had he not been terminated.
22. Plaintiff continues to have constant low back pain with radiation into his left leg and uses a cane for walking.
23. Further medical treatment for Plaintiff's compensable low back condition is reasonably required to effect a cure, provide relief and/or lessen the period of Plaintiff's disability.
 *********** *Page 7 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his back on June 22, 2008. N.C. Gen. Stat. § 97-2(6).
2. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
3. Plaintiff's termination from employment with Defendant-Employer is attributable to reasons, unrelated to the compensable injury, for which a non-disabled employee would ordinarily be terminated. Therefore, Plaintiff's termination on August 27, 2008 constitutes a constructive refusal to perform the work provided. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E.2d 397 (1996).
4. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that his inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Id.
5. In the case sub judice, Plaintiff has shown that his subsequent inability to find employment after his termination has been related to his compensable injury. The greater weight of the evidence shows that after Plaintiff's termination, plaintiff was capable of some work and made a reasonable, but unsuccessful, effort to find other employment. Demery v. Perdue Farms, Inc.,142 N.C. App. 259, 545 S.E.2d 485 (2001). Therefore, after August 27, 2008, Plaintiff *Page 8 
proved that he was disabled from employment due to the compensable injury. N.C. Gen. Stat. § 97-29; Seagraves v. Austin Co. ofGreensboro, supra.
6. Plaintiff is entitled to have defendants pay temporary total disability benefits at the rate of $535.32 per week beginning on August 28, 2008 and continuing until further Order of the Commission or until Plaintiff returns to suitable employment. N.C. Gen. Stat. § 97-29.
7. Defendants did not improperly terminate Plaintiff's temporary total disability benefits. N.C. Gen. Stat. § 97-18.1.
8. Plaintiff is entitled to have Defendants continue providing him with medical treatment for his compensable low back condition which is reasonably necessary to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendants shall pay to Plaintiff, temporary total disability benefits at the rate of $535.32 per week beginning on August 28, 2008 and continuing until further order of the Commission or until Plaintiff returns to suitable employment. Defendants shall pay all accrued disability compensation to Plaintiff in a lump sum.
2. As Plaintiff's attorney's fee, Defendants shall deduct 25% of the lump sum amount payable per Paragraph 1 above and pay such portion directly to Plaintiff's counsel. Thereafter, Defendants shall pay every fourth check of ongoing temporary total disability compensation directly to Plaintiff's counsel. *Page 9 
3. Defendants shall continue to provide Plaintiff with medical treatment for his compensable low back injury, subject to the limitations period of N.C. Gen. Stat. § 97-25.1.
4. Defendants shall pay the costs. As part of their costs, if they have not already done so, Defendants shall pay an expert witness fee to Mr. McGregor, as previously ordered by the Deputy Commissioner on December 14, 2009.
This the 12th day of August 2010.
 S/__________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/__________ PAMELA T. YOUNG CHAIR
 S/__________ DANNY L. McDONALD COMMISSIONER *Page 1